Rhonda **KEESEE**, Appellant,

v.

Ray **FREEMAN**, William **Stupps**, and The Kansas City Royals Baseball Corporation, Respondents.

No. WD 40283.

Missouri Court of Appeals, Western District.

April 4, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1989.

Application to Transfer Denied Aug. 1, 1989.

Allan J. Fanning, Kansas City, for appellant.

Joseph A. Sherman, and Kevin Locke, Sherman, Wickens, Lysaught & Speck, P.C., Kansas City, for respondents.

Before NUGENT, P.J., and SHANGLER and CLARK, JJ.

CLARK, Judge.

Rhonda Keesee sued the Kansas City Royals Baseball Corporation and two police officers, Ray Freeman and William Stupps, for injuries Keesee sustained when she was abducted after being ejected from the ballpark. The cause was submitted to a jury on the theory that defendants were negligent in abandoning Keesee in the public parking lot when she was not reasonably able to protect herself because of the state of her intoxication. The jury returned a verdict for defendants and Keesee has appealed.

A brief statement of the facts will suffice to put the points on appeal in proper context. On May 19, 1984, Keesee and other employees of a nursing home attended a company picnic and after that concluded, the group went to a night baseball game at Royals Stadium. Keesee consumed intoxicating beverages at the picnic and continued drinking beer at the ballpark. The group had been told they were not permitted to bring beer into the ballpark but several, including Keesee, did so. At some point during the game, Keesee was ascending an aisle on her way to the bathroom when she was confronted by two officers, Freeman and Stupps. Keesee was carrying a can of beer in her pocket. The officers ejected Keesee for this infraction. When last seen, Keesee was outside a fence which separates the seating area and playing field from the parking lot.

At some point after Keesee had been escorted from the Royals Stadium, the location of which was disputed by the evidence, Keesee was abducted by several men and was sexually abused. In the course of the encounter, she passed out and was later found in a public park at about 10:00 p.m., some two hours after she had been ejected from the ballpark. She was later treated at a hospital for her injuries.

On this appeal, Keesee presents seven points of alleged trial error. The first two arise because of the procedure adopted by the trial court to resolve the question of whether Freeman and Stupps as police officers employed for security purposes at the Royals Stadium were protected against liability to Keesee by official immunity. By a pre-trial stipulation, the parties agreed that the issue of official immunity presented a question of law to be decided by the court with the instructions to the jury to be framed accordingly. To decide the issue, however, it was necessary for the court to hear the evidence relative to the officers' conduct and employment as well as the details of the events in which Keesee was involved.

Over protests by appellant, the court decided that a separate evidentiary hearing at which the jury would not be present would be unnecessarily burdensome. Instead, the court directed that the trial proceed before the jury on the understanding that before submission, the court would render its decision on the immunity question. That procedure was followed and when the evidence had been presented, the court ruled that Freeman and Stupps were not protected by official immunity. The verdict directing instructions made no mention of immunity and hypothesized the acts of Freeman and Stupps as those of agents and employees of the Royals. Respondents were not permitted to argue the question of immunity.

In her first point, Keesee contends the court should have heard the evidence on the immunity issue outside the presence of the jury. She argues that the evidence which the jury heard permitted the jury to find, notwithstanding the court's ruling to the contrary, that Freeman and Stupps were acting as police officers and were therefore held to a reduced standard of care when dealing with a person who was disobeying the law. As Kee-

see sees the result in the case, she attributes the verdict to special consideration the jury gave Freeman and Stupps as police officers and, derivatively, to the Royals as their employer.

The trial court is invested with considerable discretion in matters pertaining to the conduct of a trial. An appellate court may not interfere with the exercise of such discretion unless it clearly appears that the discretion has been abused. *Holt v. Queen City Loan and Investment, Inc.*, 377 S.W.2d 393, 401 (Mo.1964). In this case, the evidence on the immunity issue came from a number of the witnesses and, had the question been considered in a separate hearing outside the presence of the jury, the trial would have been substantially prolonged. It was well within the court's discretion to eliminate this duplication of evidence and handle the matter as it did.

Appellant is also unable to prevail on the point because there is no showing on the record, apart from the verdict itself, that she suffered any prejudice because of the trial format. Under the plaintiff's verdict directing instruction, the jury was called upon to decide whether Freeman and Stupps had exercised ordinary care for Keesee's well being, taking account of Keesee's apparent state of intoxication and the potential danger to her in the parking lot. The instructions gave no credit or benefit to the defendants because Freeman and Stupps were police officers nor was the plaintiff's cause diminished by reason of any offenses against statutes or ordinances she may have committed.

The argument for prejudice rests entirely on the assumption that the jury ignored the court's instructions and decided the case wholly on an issue which was not submitted and which the court had expressly ruled in Keesee's favor. That hypothesis depends on nothing more than speculation and conjecture drawn from a verdict adverse to Keesee. The verdict is properly evaluated against a claim of prejudice by considering the result in the light of issues submitted by the verdict directing instruction and the evidence which bore on those issues. If the verdict is supported by evidence on the questions the jury was instructed to decide, then speculation that the verdict was attributable to some other factor not appearing in the record cannot sustain the claim of prejudice.

One of the contested issues in the case was the extent of Keesee's intoxication. According to Keesee, she was highly intoxicated, stumbling and falling down. Other witnesses testified that although Keesee had been drinking, she appeared to have her faculties about her and was able to take care of herself. Under the instructions, the jury could not return a verdict for Keesee unless it found that she was intoxicated to the extent that she could not protect herself from an attack and that Keesee's appearance was such that the officers knew or should have known of that condition. On evidence consistent with the verdict and the instructions, the jury could well have found, that Freeman and Stupps were under no duty to safeguard Keesee in the process of ejecting her from the stadium because Keesee was, or appeared to be, able to take care of herself.

A second issue in the case was the location where Keesee's abduction occurred. According to Keesee, she was taken by men in the Royal's parking lot. Other evidence, including statements Keesee herself gave the night of the event to a police officer and to the physician who treated her at the hospital, was that she was hitchhiking on a highway outside the ballpark and was assaulted by men who stopped to give her a ride. On this evidence, the jury could have decided in conformity with the instructions that the officers and the Royals were not liable because Keesee was not abducted or attacked on premises the Royals controlled.

As the foregoing analysis demonstrates, the verdict in this case was consistent with the jury instructions and the evidence supportive of that verdict. Prejudice may not be shown on the unsubstantiated claim that the jury ignored the court's instructions and decided the case on issues not submitted. The claim is denied.

In the second related point, Keesee contends the court erred when it refused to

give withdrawal instructions on the evidence which related to the official immunity question. She argues that the withdrawal instructions were required because the evidence injected false issues into the case and created a potential for the jury to favor Freeman, Stupps and the Royals because the conduct complained of was that of policemen enforcing the law.

■ This contention depends, again, on the unsupported assumption that the jury decided the case on extraneous issues and ignored the issues submitted by the court's instructions. That claim has already been rejected. Moreover, the question of whether a withdrawal instruction is to be given depends on whether there is a reasonable likelihood that the jury will be confused or misled by the evidence sought to be withdrawn. That decision is left to the sound discretion of the trial court. *Weisbach v. Vargas*, 656 S.W.2d 797, 799 (Mo.App. 1983). For the reasons already given, we do not find that the trial court abused its discretion in refusing to give the tendered withdrawal instructions.

Appellant's third point asserts that the trial court erred in accepting an incomplete verdict from the jury. The claim is based on the fact that although the jury indicated on the form its decision for the defendants, it did not write in, on the line provided, the names of the defendants. Complaint is also made that the court mistakenly announced the verdict as that of nine jurors when in fact it was signed by only eight.[1]

■ The claim that the omission of the defendants' names from the verdict form rendered the verdict ambiguous, incomplete and defective is not tenable. When considering the requisites of an adequate verdict, the court must construe it liberally so as to give the verdict effect if possible. *Campbell v. Kelley*, 719 S.W.2d 769, 771 (Mo. banc 1986). Even though the verdict may be defective in form, if it substantially finds the issues submitted and enables the court intelligently to pronounce judgment for one or the other of the parties in the

case, the verdict is sufficiently certain to be received. *Morse v. Johnson*, 594 S.W.2d 610, 616 (Mo. banc 1980).

Examination of the verdict form as returned in this case leaves no doubt that the jury intended to return a verdict in favor of all defendants. The verdict was sufficiently definite and complete so as to find the issues submitted and to enable the court to enter judgment, despite the irregularity of the omitted names. The point is denied.

■ The other contention as to the number of jurors who agreed to the verdict arises because jury foreman Cooney used two lines on the verdict form, one to print his name and the other for signature. Apparently the court was misled by this and upon a cursory examination of the form, announced that nine jurors had signed. Appellant seems to argue that she was prejudiced in being dissuaded from asking that the jury be polled, first because she did not know only eight jurors had agreed to the verdict and second, because she was unaware at the time that the defendants' names had not been written on the form.

Appellant makes no claim there was any indication that all eight jurors did not agree to the verdict or that the omission of the defendants' names in any way indicated confusion or disagreement by the jury on its verdict. We fail to perceive any basis for a claim of error in the fact that the jury was not polled in this situation.

■ In a fourth point, appellant contends it was error for the court to direct a verdict for the defendants on her petition Count V. That count alleged an intentional tort recognized by § 326 of the Restatement (Second) of Torts (1964) as the interference with one attempting to give aid to a person in imminent danger of harm. The theory of the count, according to appellant, was that a member of the nursing home group, one Denny Barnett, was with appellant and the officers at the time appellant was in the process of being removed from the stadium. Barnett sought the permis-

---

1. A verdict by eight jurors was acceptable under the parties' stipulation. During an evening recess, one of the jurors became ill and could not continue to participate. The cause proceeded before eleven jurors with agreement that a verdict could be returned by eight or more.

sion of the officers to call a cab for appellant, but that was refused because the officers told Barnett that appellant was under arrest. By this sequence of events, appellant claims the officers committed the intentional tort of preventing Barnett from giving aid to appellant who was then in need of that assistance to avoid the threat of physical harm.

Missouri has not recognized the cause of action described in the Restatement (Second) of Torts § 326, *supra,* and no reported case in this state has been cited by appellant or discovered by independent research indicating any disposition of Missouri courts to do so. Even were the cause of action assumed to be a viable one in this state, however, appellant's proof did not satisfy the minimum requisities for presentation of a cause of action under that doctrine.

To invoke Sections 326 and 327 of the Restatement (Second) of Torts, the evidence must show an imperilled plaintiff, a rescuer and a third party who presents or interferes with the rescuer. *Miller v. Arnal Corp.,* 129 Ariz. 484, 632 P.2d 987, 994 (1981). The cases which have applied the doctrine all involved fact situations in which the plaintiff was in immediate need of assistance from the rescuer because of a present and life-threatening danger. For example, in *Riggs v. Colis,* 107 Idaho 1028, 695 P.2d 413 (1985), the plaintiff was being attacked with a knife, had been slashed in the throat and Colis used a weapon to prevent one Knapp from coming to Riggs' aid.

In the present case, Keesee was in no imminent or impending peril as she was escorted from the ballpark, the actual attack upon her coming at a later time and at another location. Although Keesee argued that Freeman and Stupps should have anticipated some potential danger because of the degree of Keesee's intoxication, that premise makes no case for intentional tort under the petition Count V. The cause of action which the Restatement postulates applies only when there is a real and immediate threat of bodily harm and active intervention by the defendant to thwart the efforts of a rescuer. Moreover, the peril must be one at hand and evident to the defendant before the intentional character of the tortious act can be demonstrated.

The trial court properly entered judgment for the defendants on Count V of appellant's petition because the petition did not state a cause of action recognized in Missouri and because appellant's proof failed to support the petition claim.

In her next point, appellant complains of the court's exclusion from evidence of reports of non-violent crimes and incidents at Royals stadium during a period of two years prior to May 19, 1984, the date appellant was ejected from the stadium. Reports and records of violent occurrences were admitted. The issue is whether the excluded reports of non-violent incidents should have been received as proof of the duty of care owed by the Royals to appellant.

It is a general rule that owners of premises are not obligated to afford protection to invitees against criminal attacks by unknown third persons. An exception to that rule was recognized in *Brown v. National Supermarkets,* 679 S.W.2d 307 (Mo.App. 1984), where a grocery store patron was beaten and shot in the store's parking lot. The plaintiff pleaded a duty on the store to provide security protection because the store had notice of the risk by reason of a series of other crimes which had been committed in the parking lot. Those facts created a special duty the store owed its customers. When the *Brown* case was ultimately tried, the court limited proof of prior incidents to violent crimes, typical of the offense committed against appellant. This restriction on the character of evidence admissible to show the special circumstance duty was affirmed on appeal. *Brown v. National Super Markets, Inc.,* 731 S.W.2d 291 (Mo.App.1987).

More recently, the supreme court had occasion to review the *Brown* doctrine in *Decker v. Gramex Corp.,* 758 S.W.2d 59 (Mo. banc 1988), and *Madden v. C & K Barbecue Carryout, Inc.,* 758 S.W.2d 59 (Mo. banc 1988). In both cases, the plaintiffs were victims of criminal acts at busi-

ness locations where violent crimes had previously occurred. The court held that business owners may be under a duty to protect their invitees from the criminal attacks of unknown third persons. Whether such a duty does exist depends on whether the business owner may reasonably foresee the danger based on prior events. Referring to *Faheen v. City Parking Corp.*, 734 S.W.2d 270 (Mo.App.1987), the court noted that assassination by car bombing was not reasonably foreseeable based on prior incidents of violent street crime, but other acts of street crime were.

■ The sense of *Brown, Decker* and *Madden* is that the special duty of care by a business owner to an invitee arises where prior criminal acts may reasonably be expected to be repeated and to thereby forecast a potential hazard to customers. It is not necessary that prior crimes and later offenses be identical, but the nature of the criminal acts must share common elements sufficient to place the business owner on notice of the danger and alert him to the safeguards which are appropriate to the risks.

■ In the present case, appellant's suit was based on the violent incident of abduction and assault. She was permitted to show to the jury the records of all other violent crimes and incidents which had occurred at Royals Stadium the previous two years. Records of disorderly conduct by Royals patrons and other non-violent events at the stadium were properly excluded because they did not tend to show notice to the Royals of a danger to customers from acts of violence such as kidnapping and assault.

It also appears from the evidence in the case that appellant can show no prejudice from the exclusion of the records of non-violent incidents. Appellant was permitted to prove and argue to the jury the dangers present at the stadium as demonstrated by eighty-eight violent crimes committed there in playing seasons the past two years. Such evidence was more than sufficient to establish the special duty of care. The evidence of non-violent occurrences would have been, at most, cumulative.

Under the same point, appellant argues she was entitled to use the evidence of non-violent occurrences at Royals Stadium because a special relationship existed between her and respondents. She says that special relationship, recognized in *Virginia D. v. Madesco Investment Corp.*, 648 S.W.2d 881 (Mo. banc 1983), entitles the plaintiff to prove non-violent as well as violent prior acts to demonstrate the duty of care owed by the business owner.

In *Virginia D.*, the plaintiff was the guest of the defendant innkeeper and was victimized on the hotel premises. Appellant in the subject case, as a patron of the Royals, has no basis to assert a comparable relationship to that of a hotel guest. The cited case simply is not in point or applicable.

Even were it to be assumed, however, that such a special relationship did exist during the period of time Keesee was at least superficially in the custody of the officers, the doctrine of *Virginia D.*, does not aid her claim to use of the excluded records. When Keesee was released in the parking lot, the special relationship, if there was one, ceased and it was sometime thereafter and at another location when she was injured. The claim is therefore entirely without merit.

■ In the sixth point, appellant contends the court erred when it gave certain admonitions to the jury regarding the reported incidents of violence at Royals Stadium during the two years prior to appellant's assault and injury. The evidence in question consisted of reports made to police officers, reports made to the Royals and admissions by the defendants that certain violent incidents had been reported. The defendants had objected to the use of the incident reports, being records from the police department and from the files of the Royals, as hearsay, but the court ruled the evidence admissible for the limited purpose of showing notice to the Royals that such occurrences had been reported.

On three occasions, the court instructed the jury as to the purpose for which the reports were to be considered and cautioned that the existence of the reports did

not necessarily prove that the reports were true. Appellant claims the cautionary instructions should not have been given because the effect was to belittle plaintiff's evidence and to suggest to the jury that the reports were unreliable.

The exhibits in question, if offered to prove that each incident described did occur, were inadmissible as hearsay. This follows because the reports were second hand accounts, and in some cases third hand accounts, of what witnesses to the events had purportedly described as violent occurrences they had observed. Obviously, the witnesses to the events were not present in court to give testimony. The reports were substituted as the out-of-court statements the witnesses had made. It requires no citation of authority for the proposition that the reports were hearsay and inadmissible to prove that the events did in fact occur in the details as related in the reports. The instructions the court gave to the jury on the effect of the reports as evidence were correct statements of the law and therefore not error.

Moreover, as appellant's case was made, it was immaterial whether appellant's evidence actually proved the facts of the violent incidents at the stadium. Respondents did not contend or suggest that the reports were false or fabricated and their admissions established respondents' knowledge of the reports. To establish the duty of care owed patrons at the stadium by the Royals, it was merely necessary for appellant to prove notice to respondents that numerous acts of violence on the premises were being reported. The instructions to the jury of which appellant complains did not diminish that proof. The point is denied.

In a final and related point to the complaint about the court's instruction described in the preceding point, appellant contends the court erred when it denied admission in evidence of certain computer print-outs. This material consisted of listings prepared by the police department and by the Royals showing all of the violent and non-violent incidents which appeared in the underlying reports. Appellant suggests the order barring the computer print-outs from introduction in evidence was erroneous for several reasons. No extended discussion of the point is needed. The summary of non-violent incidents was excludable on grounds already discussed and those incidents comprised a substantial number of the print-out items. In addition, the print-outs were compounded hearsay being drawn themselves from other hearsay.

This same question of using computer print-outs listing reports of crimes was considered in *Brown v. National Super Markets*, 731 S.W.2d at 295. The court's order denying admission of the material was affirmed. For the same reasons given in that opinion, the same result is reached here.

The judgment is affirmed.

All concur.