**Michael P. MATHEUS, Respondent,**

**v.**

**LUTHERAN CHARITIES ASSOCIATION, a/k/a Lutheran Medical Center, Appellant.**

**No. 71621.**

Supreme Court of Missouri,
En Banc.

Dec. 12, 1989.

Rehearing Denied Jan. 10, 1990.

Robyn Greifzu Fox, Joseph H. Mueller, St. Louis, for appellant.

Susan M. Hais, Mary Ann Weems, Clayton, for respondent.

COVINGTON, Justice.

Plaintiff, Michael P. Matheus, obtained a jury verdict of $350,000.00 damages in a medical malpractice case. Defendant, Lutheran Charities, a/k/a Lutheran Medical Center, appealed. Defendant contended

that plaintiff failed to make a submissible case, attacked the submission of plaintiff's verdict directing instruction, and claimed trial court error in failure to give a withdrawal instruction offered by defendant. The Court of Appeals, Eastern District, affirmed the trial court as to submissibility and the verdict directing instruction but reversed and remanded the cause on the issue of damages as a consequence of the trial court's refusal to give the withdrawal instruction offered by defendant. This Court granted transfer. *Rule 83.03.*

With the exception of the question of the withdrawal instruction, this Court adopts as its decision the opinion, with minor modifications, of the Honorable Harold L. Satz. The judgment of the trial court is affirmed.

Defendant first contends that plaintiff, Michael Matheus, failed to make a submissible case. To determine submissibility, the Court views all the evidence and reasonable inferences in the light most favorable to plaintiff. *E.g., Marshall v. Edlin,* 690 S.W.2d 477, 479 (Mo.App.1985).

About 8:30 p.m. on December 28, 1980, plaintiff was taken to defendant's emergency room by a relative, Deborah Hollerman. Plaintiff and Hollerman both told the nurse that plaintiff was suffering from abdominal pains and diarrhea, as well as a rash. Plaintiff repeated his complaints of abdominal pain to Dr. Dominquez, the emergency room physician. Dr. Dominquez diagnosed plaintiff's condition as an allergic reaction and treated plaintiff for that condition.

About 48 hours later, at approximately 7:00 p.m. on December 30, 1980, plaintiff returned to defendant's emergency room. Plaintiff was treated by Dr. Colla. He determined plaintiff was suffering from "pneumoperitoneum, ... air under the dia-

phragm ... an indication of a rupture ... a perforation of some organ down in the abdomen...." Dr. Colla contacted Dr. Kliefoth, the surgeon on call. Dr. Kliefoth performed exploratory surgery, during which he found plaintiff "had a perforated diverticulitis, with an abscess in the left lower quadrant."[1] He drained the plaintiff's abdominal cavity and also performed a colostomy.

In February, 1981, additional surgery was done to remove the perforated portion of plaintiff's bowel and to "sew [the bowel] back together." Two months later, in April, 1981, more surgery was performed to remove the colostomy. Then, in April, 1987, plaintiff underwent a fourth surgical procedure—the repair of a hernia at the incision site.

Plaintiff's theory of negligence was the failure of Dr. Dominquez to do a physical examination of plaintiff's abdomen during plaintiff's first visit to defendant's emergency room. This failure precluded the diagnosis of plaintiff's illness as diverticulitis, which, left untreated, necessitated the subsequent surgical procedures.

On appeal, defendant argues plaintiff did not show a causal connection between Dr. Dominquez's failure to perform an abdominal examination and plaintiff's surgeries.

Plaintiff's expert was Dr. Seymour Herschberg. On direct examination, plaintiff established the following facts, primarily through Dr. Herschberg's testimony.

Plaintiff had diverticulitis at the time of his first visit to defendant's emergency room at 8:30 p.m. on December 28, 1980. Treatment of diverticulitis with antibiotics at its onset can prevent subsequent abscessing, perforation of the colon and, in turn, surgery. Left untreated, however,

---

**1.** According to Dr. Herschberg:

Diverticulitis is an inflammation in the bowel. It begins with the formation of a diverticulum, or of several diverticula. A diverticulum is "a sac or an outpouching of the bowel wall ... due to a weak area in the bowel...." This sac cannot drain well and "becomes plugged with food particles or secretions ..." which irritates it and "it begins to inflame and swell." The

swelling further inhibits drainage and the diverticulum "becomes a very good area for bacteria to form, to grow, and develop and form pus, and that become [sic] infected...." Diverticulitis is simply the inflammation of a diverticulum. Untreated diverticulitis can cause an abscess to form in the sac and that abscess will eventually rupture and perforate the bowel.

diverticulitis can abscess, often rendering antibiotic treatment ineffective. If plaintiff had been given a proper physical examination, the diverticulitis could have been diagnosed. Plaintiff's diverticulitis ruptured as a result of the untreated infection, and the ruptured abscess made the subsequent surgeries necessary.

In Dr. Herschberg's opinion, Dr. Dominquez's examination, in which he failed to perform any physical examination of plaintiff's abdominal area, did not meet the standard of skill and care ordinarily used by members of his profession. This testimony established Dr. Dominquez breached a duty which caused plaintiff's injuries and, thus, plaintiff made a submissible case. *Jines v. Young*, 732 S.W.2d 938, 944 (Mo. App.1987).

Defendant's attack on causation is based on the formation of the abscess. Defendant contends plaintiff failed to show the abscess had not begun to form at the time of plaintiff's first emergency room visit. Defendant derives its argument primarily from Dr. Herschberg's testimony on cross-examination.

During cross-examination, Dr. Herschberg was asked:

Q: Can you tell us how long it takes for a (sic) inflammation till the ruptured (sic)?

He replied that it depends on several variables. "But," he went on to say, "abscess formation would take ... days," "not a week to a month ... [nor] a matter of hours." He could not "pinpoint it any closer ... except to say we're talking in terms of days." He could not be precise because "the health of the individual, the severity of the infection, the host's resistance factor, and many other complicating issues, including the defense mechanisms of the host" all affect the time an abscess would take to rupture. He also said that he "believe[d]" the diverticulum perforated within the twelve hours preceding the examination in the emergency room on December 30, 1980.

■ With these basic facts, defendant carefully constructs his argument. Plaintiff first visited defendant's emergency room about 8:30 p.m. on December 28, 1980. His second visit, was about 48 hours later, at 7:17 p.m. on December 30, 1980.[2] Since Dr. Herschberg said the rupture occurred about 12 hours before the second visit, defendant reasons, the rupture must have occurred at approximately 7:00 a.m. on December 30, 1980, some 36 hours after plaintiff's first visit. But, defendant points out, Dr. Herschberg also said an abscess begins forming "days" before rupturing; therefore, defendant reasons, an abscess must have existed at the time of plaintiff's first visit which was 36 hours before the rupture. An abscess does not respond to treatment by antibiotics; therefore, defendant argues, even if Dr. Dominquez had performed a proper physical examination, he would have found an abscess already formed and the course of plaintiff's subsequent treatment—the surgeries—would have been no different. In short, defendant contends, plaintiff failed to show he would not have had the same course of treatment even if he had been properly examined and diagnosed on his first emergency room visit, and, thus, defendant argues, plaintiff did not show that the failure to give him a physical examination was the cause of his surgeries.

The keystone of defendant's argument is the perceived precision of Dr. Herschberg's testimony on cross-examination; in particular, his statement that an abscess would take "days" to form. But, as quoted, his testimony about the onset of plaintiff's abscess and the time for abscess formation was not as precise as defendant interprets it to be. Dr. Herschberg never did "pinpoint" the onset of the abscess. To the contrary, he specifically said he could not

---

**2.** In its brief, defendant states: "The second emergency room visit occurred on December 30, 1980, at 7:17 p.m." The authority given for this statement is "Plaintiff's Exhibit 2." No transcript reference is given. That Exhibit is not included in the record. Plaintiff, however, did say his second visit occurred about 7:00 p.m.

do so. And, he qualifies "days" to mean neither weeks nor hours, surely a day and a half could come within this definition of "days."

While defendant's analysis may be consistent with Dr. Herschberg's testimony on cross-examination, the analysis is not mandated by the testimony. His testimony on cross-examination does not completely contradict his direct testimony and, thus, does not vitiate his direct testimony. *See, e.g., Jines,* 732 S.W.2d at 946; *Odum v. Cejas,* 510 S.W.2d 218, 223 (Mo.App.1974). Nor does Dr. Herschberg's testimony on cross-examination make the absence or presence of an abscess on the first visit equally probable. Plaintiff is entitled to have the evidence and reasonable inferences viewed in the light most favorable to him, not the light least favorable to him. *See, e.g., Marshall,* 690 S.W.2d at 479. Consequently, Dr. Herschberg's testimony on direct stands, and, plaintiff made a submissible case.

Defendant also attacks the submission of plaintiff's verdict directing instruction. This instruction reads:

### INSTRUCTION NO. *8*

Your verdict must be for plaintiff if you believe:

First, the physician Dominquez was an employee of Lutheran Medical Center, a/k/a Lutheran Charities, and was operating within the scope and course of his employment by Lutheran Medical Center, a/k/a Lutheran Charities, and

Second, Dominquez failed to conduct the appropriate evaluation of the patient in failing to perform physical examination, and

Third, Dominquez was thereby negligent, and

Fourth, as a direct result of such negligence plaintiff sustained damage.

Defendant's attack is two pronged. Defendant contends the phrase "scope and course of ... employment," in paragraph First, must be defined and it was not. Defendant also contends the phrase "appropriate evaluation," in paragraph Second, is "vague and argumentative."

■ Admittedly, the phrase "scope and course of ... employment" was not defined in the verdict directing instruction, Instruction 8. It was, however, defined in the immediately preceding instruction, Instruction 7. Phrases used in only one instruction may be defined in that instruction or in a separate instruction. *See* M.A.I. 13.05 Notes on Use (1978 Revision). The Court assumes the jury followed the directions given by the court and considered all instructions given. *E.g., Dunkin v. Reagon,* 710 S.W.2d 498, 501 (Mo.App.1986).

A similar analysis answers defendant's other complaint. The phrase "failed to conduct an appropriate evaluation," used in paragraph Second, is specifically defined in that paragraph as the failure "to perform [a] physical examination." Sensibly read, the latter failure was the negligent omission submitted to the jury.

Defendant relies on *Grindstaff v. Tygett,* 655 S.W.2d 70 (Mo.App.1983), in which the court of appeals held the phrase "not medically proper" failed to submit to the jury the ultimate facts defining the defendant's negligence. *Id.* at 74. In *Grindstaff,* the instruction requested the jury to find the defendant negligent because he "performed a midforceps rotation delivery when such procedure was not medically proper." *Id.* at 72. This submission was a generalized theory of negligence which contained "at least two more specific theories of negligence: (1) defendant should not have started the procedure, or, (2) starting the procedure was proper but, once started, defendant should have stopped." *Id.* at 73. This submission, thus, did not give the jury any factual guideline or standard to determine negligence. *Id.* at 74. Here, plaintiff's submission submitted one factual guideline—the failure to give plaintiff a physical examination. Thus, *Grindstaff* is not controlling.

■ Defendant contends error in the trial court's failure to give a withdrawal in-

struction offered by defendant. The instruction reads: "The evidence of the plaintiff's hospital and medical bills is withdrawn from the case and you are not to consider such evidence in arriving at your verdict." Defendant contends that plaintiff presented no evidence to prove the bills were reasonable for the treatment provided, and, thus, evidence of their existence should not have been considered by the jury. Defendant relies upon *Brautigam v. Hoffman*, 444 S.W.2d 528 (Mo.App.1969), and *Girratono v. Kansas City Public Service Co.*, 363 Mo. 359, 251 S.W.2d 59 (1952), for the general rule that a plaintiff may not recover special damages in the absence of substantial evidence as to the propriety of services rendered, the amount charged or paid, and the reasonableness of the amount charged.

The authority upon which defendant relies is not applicable to the facts of the present case. The transcript reflects that the plaintiff, Michael Matheus, testified early in the trial that the "total monetary loss" to him, including time off work, doctor's bills, hospital bills and nursing bills was "around $42,000." Defendant did not object to this testimony other than to say it was "repetitious." The trial court overruled the objection. Later in the trial, plaintiff identified Exhibit 7 and asked to read "the bottom amount" of the exhibit. Defendant again objected on the ground that the evidence was "repetitious." The trial court overruled the objection. Plaintiff's Exhibit 7 contained the hospital and medical bills as a package. Plaintiff's counsel read the individual bills into evidence giving the amount and to whom each was owed. The bills included charges from defendant, Lutheran Medical Center, and Dr. Kleifoth, defendant's own witness, the surgeon on call who performed exploratory surgery and then the colostomy, as well as bills from other hospitals who treated the plaintiff. Of the $20,855.06 total, Lutheran Medical Center's bills represented $13,690.94 and Dr. Kleifoth's bill constituted $1,255.00. Cumulatively, these amounts represent nearly 72% of the bills contained in Exhibit 7. When plaintiff offered plaintiff's Exhibits 1 through 7, defendant responded: "Object to Exhibit No. 5, Your Honor. I have no objection to the rest of them." Plaintiff's Exhibits 1, 2, 3, 4, 6 and 7 were then admitted.

In summary, evidence of plaintiff's hospital and medical bills was presented as a package which included, in significant part, defendant's own bills as well as those of defendant's witness. In oral argument in this Court defendant conceded that its own bills are reasonable. At trial, in both instances in which plaintiff adduced evidence with respect to medical and hospital bills, defendant objected upon a ground completely different from that which he now claims as a basis for reversal. Furthermore, defendant affirmatively stated that he had no objection to the admission of Exhibit 7. On this record, the bills were properly before the jury and the trial court did not err in refusing to give the withdrawal instruction offered by defendant.

The judgment of the trial court is affirmed.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS and BILLINGS, JJ., and DOWD, Special Judge, concur.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.