Linda SEABAUGH, et al., Plaintiffs–
Respondents/Cross–Appellants,

v.

MILDE FARMS, INC., Defendant–
Appellant/Cross–Respondent.

No. 73372.

Supreme Court of Missouri,
En Banc.

Sept. 10, 1991.

Stephen C. Wilson, David G. Beeson, Jackson, for defendant-appellant, cross-respondent.

Rebecca McDowell Cook, John L. Cook, Jeffrey S. Maguire, Cape Girardeau, for plaintiffs-respondents, cross-appellants.

HOLSTEIN, Judge.

Defendant appealed and plaintiffs cross-appealed from a judgment entered in the circuit court of Cape Girardeau County arising out of an automobile accident. Following opinion by the Missouri Court of Appeals, Eastern District, this Court granted transfer. Rule 83.03; Mo.Const. art. V, § 10.[1] Affirmed.

The automobile collision giving rise to this litigation occurred on September 18, 1987, on County Road 316 in Cape Girardeau County. County Road 316 is a gravel road approximately twenty feet in width. Linda Seabaugh was driving her Ford Aerostar van in a northerly direction, approaching a "blind curve" to the right, or east. She was accompanied by her two minor children. At the same time, approaching the curve from the opposite direction was Doug Myers, operating a 1979 Chevrolet C–15 truck owned by defendant Milde Farms, Inc. Myers was employed by Milde Farms. At the curve there are two traveled "ruts" located near the center of the roadway. The two vehicles collided head-on. According to the plaintiff, the oncoming pickup truck was on her side of the road about three feet from the inside edge of the curve when she first saw the truck. Her vehicle was "right at the center" of the roadway. She did not know her exact speed but believed she was traveling "considerably less" than 35 to 40 miles per hour. She claimed the pickup was going "a lot faster than I was going." The drivers of both vehicles applied their brakes, but to no avail. Mrs. Seabaugh's testimony regarding the location of the vehicles was borne out by testimony of the investigating highway patrol trooper. According to him, the skid marks from the Milde Farm vehicle came to within three feet of the east edge of the road at one point and were across the center of the roadway on the curve at the point of the collision. The Seabaugh vehicle's skid marks indicated that its skid began near the center of the roadway and went to the right. As the trooper put it, "Apparently she was traveling on the tracks" when she began to apply her brakes.

Mrs. Seabaugh sustained a break in the neck of the talus, or ankle bone. The ankle injury resulted in surgery, hospitalization, and loss of work. In addition, Mrs. Seabaugh suffered substantial discomfort and limitation of movement in the talonavicular joint, that is, the joint between the foot and ankle.

A petition was initially filed by Mrs. Seabaugh and her children against Milde Farms. Her husband, Dennis Seabaugh, filed a consortium claim. Doug Myers, the driver of the Milde Farms vehicle, was not named in this suit. A counterclaim was filed against Mrs. Seabaugh by Milde Farms for damages to its truck, and a claim for contribution was made against Linda Seabaugh for injuries to the Seabaugh children. The children's claims and the Milde Farms claim against Linda Seabaugh for her fault in causing injury to the children were severed.

1. Unless otherwise noted, references to rules are to Missouri Rules of Court 1991.

On September 27, 1989, trial commenced, lasting two days. On September 28th the cause was submitted to the jury. The jury returned a verdict in favor of Linda Seabaugh, finding her damages to be $100,000 and in addition, found her to be eighteen percent at fault and the Milde Farms driver to be eighty-two percent at fault. The jury found Dennis Seabaugh's damages to be $5,000. The jury returned a verdict in favor of the defendant on its counterclaim, finding its damages to be $2,500. The trial court received the verdicts and entered a reduced judgment against each of the parties based upon their proportionate percentage of fault. From that judgment the defendant appealed and the plaintiffs cross-appealed. Other facts relevant to the issues on appeal will be discussed in conjunction with the points.

I.

The first point relates to the trial court's refusal to grant a continuance when Doug Myers failed to appear on the second day of trial. Some factual background is necessary to discussion of this point. Myers left employment with Milde Farms shortly after the accident. He was deposed on October 13, 1988. At that time he resided in Cape Girardeau. At the deposition, the defendant did not ask any questions of Myers. In the deposition, Myers testified that both he and Seabaugh were in the middle of the road when he first saw her and that he was driving 25 to 30 miles per hour as he approached the curve. He claimed both vehicles were partially in the other's lane at the point of impact. He also admitted to being involved in prior accidents, though he claimed those were not his fault. He also admitted to a prior driver's license suspension due to speeding tickets. Milde Farms was informed of the suspended license prior to this accident. However, nothing in the deposition or the

trial transcript[2] suggests that Milde Farms was informed of the prior accidents.

On February 23, 1989, Myers was subpoenaed for trial to be held May 25, 1989. In March, 1989, Myers enlisted in the United States Air Force. Myers, through counsel, sought to quash the subpoena pursuant to the Soldiers and Sailors Civil Relief Act. That motion was never ruled. However, the case was not tried in May, but was rescheduled for September, 1989. The defendant made arrangements for Myers to return to Missouri for the trial by purchasing a roundtrip airline ticket. Myers was stationed in the state of Washington. The airline ticket scheduled Myers to arrive in Missouri on September 26, 1989, and to depart St. Louis at approximately 8:00 a.m. on September 28, 1989. Myers was present on the first day of trial.

At about 3:30 p.m. on September 27th, as an accommodation to Myers and counsel for defendant and over the strong objection of counsel for the plaintiffs, Myers was allowed to leave with the understanding that he would be produced the next day by defense counsel. Defense counsel informed the court at that time that he did not intend to use Myers as a witness in his case in chief, although he understood the plaintiffs might wish to call Myers. With those assurances and without being informed that Myers held a ticket on an airplane to depart from St. Louis to the state of Washington the following morning at 8:00 a.m., the trial court permitted Myers to leave.[3]

According to defense counsel, his office was informed at about 5:00 p.m. on September 27th that Myers had been in contact with his commanding officer and was told to be back on the airplane as scheduled departing at 8:00 the following morning. Defense counsel had at least one subsequent communication with Myers at 10:30 p.m., when Myers told defense counsel that

2. No evidence was offered at trial regarding the prior accidents. An official of Milde Farms testified that prior to the accident he was aware that Myers' license had been suspended for a period of time.

3. The facts in this paragraph are not stated in defendant's affidavit and motion for continuance. The court stated them for the record when considering defendant's initial motion for continuance. Defense counsel agreed that they correctly reflect a conference held off the record the previous afternoon.

it was his intent to use the prepaid ticket and leave St. Louis at 8:00 a.m. the next day. Defense counsel did not communicate with the court or other law enforcement officials in an effort to obtain any process to prevent Myers from leaving the jurisdiction.

The trial resumed at approximately 9:00 the next morning. Before commencement of proceedings, defense counsel made first an oral motion and subsequently a written motion under Rule 65. It alleged part of the procedural history discussed above regarding Myers' absence. It also alleged that if present, Myers would testify that prior to his driver's license being suspended, Milde Farms was not told about speeding tickets, that Milde Farms had not been told about Myers' previous automobile accidents, that when Myers first saw the Seabaugh vehicle, the vehicle was in the "driving ruts" and began to skid right, and that his vehicle was traveling "much slower" than that being driven by Linda Seabaugh at the time of the collision. After the oral motion was made and before the written motion had been presented to the court, the trial judge reminded defense counsel that the witness had been dismissed the preceding day as an accommodation to defense counsel, and with the agreement the witness would be present the following day. The trial judge also related the statement of defense counsel that Myers would not be called in the defendant's case. The trial judge then overruled the motion for continuance.

Undaunted by this ruling, defense counsel persisted by asking the court whether the plaintiffs' attorney would admit certain facts that he claimed the witness would testify to under oath, and then asked the court that if the plaintiffs refused to admit such facts, if the court would "reconsider the continuance." At that point, the trial judge noted he was of the opinion that Rule 65 did not apply to applications filed after commencement of trial. The motion was again overruled.

Defendant's point assumes that the trial judge's denial of a continuance was based solely upon his opinion that Rule 65 did not apply after trial commenced. That assumption is incorrect and contrary to this record. From what has been recited, it is clear that the trial court overruled the motion for continuance twice; each time for a somewhat different reason. The first ruling was based in large part upon representations made the previous afternoon when defense counsel had urged that the witness be permitted to leave, with assurances given to the trial judge that the witness's testimony was not going to be used in the defense and the understanding that the witness would be made available to the plaintiffs the following day, should they wish to call him. Defense counsel made these representations with knowledge that the witness had a ticket to depart the state of Missouri at 8:00 a.m. the next day, a fact not disclosed to the court. In addition, after learning the witness intended to use the ticket, defense counsel took no steps to obtain any process of the court to prevent the witness from leaving. At least as early as May 25, 1989, defense counsel was aware that Myers was in the military service, and no arrangements had been made to take another deposition. All of these facts were known to the trial judge, and all support a conclusion of a lack of diligence in obtaining Myers' testimony by deposition or having Myers present on the second day of trial. Whether the trial court was correct in his opinion that Rule 65 was inapplicable after commencement of trial need not be decided here.[4] The trial judge's initial ruling was not based solely on that opinion.

Defendant makes a second flawed assumption. Defendant assumes its application for continuance is in proper form and sufficiently stated facts entitling it to a continuance and, because it was sufficient, the trial court could not deny a continuance. This assumption is based on the language of Rule 65.05, providing: "If the court finds the affidavit sufficient, the civil action shall be continued unless the oppos-

---

**4.** Even though transfer was granted because of this issue, any discussion would be pure dictum because it is not dispositive of the case.

ing party will admit that the witness, if present, would swear to the facts set out in the affidavit...."

■ As a general principle, the grant or denial of a continuance is largely within the discretion of the trial court. *Collins v. Director of Revenue*, 691 S.W.2d 246, 254 (Mo. banc 1985); *Rule 65.01*. In reviewing a trial court's denial of a continuance based on absence of witnesses, every intendment is made favoring the correctness of that ruling. *Hall v. Williams*, 330 Mo. 473, 50 S.W.2d 138, 139 (1932). The denial of a continuance is rarely reversible error, but the trial court does not enjoy absolute or arbitrary discretion. *Missouri Public Service Company v. Argenbright*, 457 S.W.2d 777, 785 (Mo.1970).

■ In the case now before the Court, the application admits that defense counsel bought the absent witness a ticket on an airplane that was to depart the state on the morning that the continuance was requested. Defense counsel became aware of the witness's impending departure several hours prior to him actually leaving. The affidavit fails to explain why defense counsel made no effort to depose Myers at his military base prior to trial, why no effort was made to obtain any order preventing Myers' departure, why defense counsel informed the trial judge on the first day of trial that he did not intend to call Myers in his "case-in-chief," or why defense counsel waited until Myers had departed to inform the trial judge and opposing counsel that Myers had the ticket and intended to use it. Taken together, the facts disclosed in the affidavit, the facts known to the trial judge, and the explanations omitted from the affidavit demonstrate a lack of diligence. The application was insufficient to support a claim of abuse of discretion in denying the continuance.

Defendant responds by arguing that the trial court should have permitted amendment to supply these insufficiencies in the application. Overlooked is the fact that the trial judge and plaintiff's counsel confronted defendant's attorney with the discrepancies between the claims contained in the motion and facts known to the trial judge.

At that time, no effort was made to amend. The only explanation offered for any lack of diligence in having the witness present on the second day of trial was defense counsel's belief that the trial would be over in one day. That explanation fails to address all of the deficiencies discussed above. Even on appeal, no adequate explanation is suggested for the apparent lack of diligence. The only conclusion to draw is that no rational explanation exists.

■ Even if this Court were to take the position, as defendant asserts, that the application on its face was sufficient, when the record reflects facts known to the trial judge refuting the allegations of the request for continuance, the trial court may consider such facts in exercising its discretion to deny the continuance. To hold that a trial judge is bound by the assertions of the application for continuance would place form over substance and require a court to grant a continuance even though the application is palpably false or incomplete. No authority cited or found holds that a trial court is limited to considering only the allegations found within the four corners of the motion when deciding whether to grant or deny a continuance under Rules 65.04 and 65.05.

■ One of the authorities cited by defendant supports the idea that a proper written request for a continuance does not conclusively bind the trial judge and mandate a continuance. In *Darr v. State*, 723 S.W.2d 455 (Mo.App.1986), the Eastern District of the Court of Appeals noted that no proper request for continuance had been made, but "[e]ven if a request for a continuance had been properly made, the trial court would have acted within its discretion in denying it." 723 S.W.2d at 457. In *Darr*, the record showed the absent witness's testimony was irrelevant. In this case, all four of the facts to which Myers allegedly would have testified could have been obtained either from an official of Milde Farms or gleaned from Myers' deposition. No offer was made of Myers' deposition by defendant. In addition, as in *Darr*, the evidence of Myers' prior accidents was irrelevant. The trial judge did

not abuse discretion in denying the continuance.

## II.

Appellant's second point is that the trial court erred in failing to declare a mistrial after the trial court denied the continuance due to the absence of witness Myers. Like continuances, the grant of a mistrial is left to the sound discretion of the trial court. Mistrials are a most drastic remedy and should be reserved for the most grievous error where prejudice cannot otherwise be removed. *Pierce v. Platte–Clay Elec. Co-op., Inc.*, 769 S.W.2d 769, 778 (Mo. banc 1989); *Vaughn v. Michelin Tire Corp.*, 756 S.W.2d 548, 561 (Mo.App. 1988). Here the denial of the continuance was not error. It follows that failure to grant a mistrial was also not a reversible error.

## III.

The third point takes issue with the admission of certain testimony of a plaintiff's witness, Brenda Nicholi. She was the professional physical therapist who, as prescribed by a physician, saw and treated Linda Seabaugh on seventeen occasions following the ankle injury. Nicholi testified that upon completion of the treatments, Mrs. Seabaugh continued to have problems with the foot and ankle, including severely limited inversion and eversion, or in and out movement of the foot. An inability to do those things, according to Ms. Nicholi, prevents the ankle from absorbing shock, and transmits shock up the leg to the knee and hip joints. Plaintiffs' counsel then asked, "And what happens to [knee] joints over the course of years when more force is transmitted?" An objection was interposed asserting there was "no proper foundation that this witness is qualified to give that kind of opinion." The objection was overruled. Nicholi answered that more degenerative changes occur in the knee joint as a result of the limited movement of the ankle. The witness was cross-examined and excused. Thereafter the jury was dismissed for the day.

At that point, defense counsel moved to strike the Nicholi testimony with regard to future degenerative changes in the knee joint. The basis of the motion was more expansive than the original objection. The motion to strike was based on the claim that the testimony lacked "sufficient basis," was speculative and conjectural, and lacked proper foundation. The trial judge noted that the objection at that point was untimely, and overruled the motion.

At the close of all the evidence, a withdrawal instruction was offered and refused. That refused instruction provided, "The evidence of possible future degeneration of other bone joints in plaintiff Linda Seabaugh's right leg is withdrawn from the case and you are not to consider such evidence in arriving at your verdict."

The third point claims error because the objection and motion to strike were overruled and the withdrawal instruction refused. The initial objection was limited to Nicholi's qualifications to render an opinion regarding the long term effect of limited motion in the talonavicular joint on the knee joint.

The general rule is that qualification of a witness as an expert is largely within the discretion of the trial judge. *Guiley v. Lowe*, 314 S.W.2d 232, 239 (Mo. 1958). The issue in determining whether a particular witness is an expert is not whether there are others better qualified. The question is whether the witness possesses peculiar knowledge, wisdom or skill regarding the subject of inquiry, acquired by study, investigation, observation, practice or experience. *Hamre v. Conger, et al.*, 357 Mo. 497, 209 S.W.2d 242, 248 (1948). The expert's competence on the subject must be superior to that of the ordinary juror, and the opinion must aid the jurors in deciding an issue in the case. *Sampson v. Missouri Pacific R. Co.*, 560 S.W.2d 573, 586 (Mo.1978).

Here the evidence showed Nicholi to be a professional physical therapist holding a bachelor of science and masters degree in physical therapy. She had been practicing physical therapy for seventeen years. At the time of trial she had an

independent physical therapy practice in Cape Girardeau. The statutes relating to the witness's profession also tell something of the witness's qualifications. A professional physical therapist is authorized to treat and perform tests in the diagnosis and treatment of neuromuscular functions. Section *334.500(3)*. To qualify as a professional physical therapist, one must complete formal training and pass an examination in human anatomy, chemistry, kinesiology, pathology, physics, physiology, psychology, physical therapy theory and related subjects. Section *334.530*. Nicholi's training and experience clearly show an expertise superior to that of an ordinary juror in determining the long term effects of limited ankle movement on the knee joint. The trial judge did not abuse discretion by overruling the initial objection to her qualifications.

 The record also plainly demonstrates the more expansive motion to strike was untimely. The general rule is that objections to evidence and the basis therefor must be brought to the attention of the trial court in time for it to act. *State ex rel. State Hwy. Comm'n. v. Offutt*, 488 S.W.2d 656, 660 (Mo.1972). Timely objections to evidence are necessary to ensure that the trial judge has an opportunity to intelligently rule the challenge and to give opposing counsel the opportunity to respond. *Chism v. Steffens*, 797 S.W.2d 553, 559 (Mo.App.1990); *Keller v. Anderson Motor Service, Inc.*, 652 S.W.2d 735, 737 (Mo.App.1983); *Halford v. Yandell*, 558 S.W.2d 400, 404 (Mo.App.1977). Here there was no objection to the scientific basis of Nicholi's opinion. That claim was made first in the motion to strike the testimony made after the witness was cross-examined and excused. Even if the motion to strike is treated as an objection, it came too late to give opposing counsel an opportunity to correct any deficiencies in the questions or lay an appropriate foundation for the witness's opinion. It is consistently held that a party waives an objection if it is not timely made. *Galovich v. Hertz Corp.*, 513 S.W.2d 325, 336 (Mo.1974). There was no error in determining that the motion to

strike was untimely and overruling the same.

 The withdrawal instruction was based on MAI 34.02. The Comments under that instruction state, "MAI 34.02 may be given only at the discretion of the trial judge." The Comment is consistent with cases holding that giving such instructions is left to the sound discretion of the trial judge. *Bradley v. Browning–Ferris Industries, Inc.*, 779 S.W.2d 760, 765 (Mo. App.1989); *Keesee v. Freeman*, 772 S.W.2d 663, 667 (Mo.App.1989). Once the evidence of potential degenerative changes in the knee was before the jury, the trial judge did not abuse discretion by failing to give a withdrawal instruction on that question. *Matheus v. Lutheran Charities Ass'n*, 781 S.W.2d 787, 791 (Mo. banc 1989). The third point is denied.

### IV. and V.

The fourth and fifth points are interrelated. The fifth point argues that the trial court should not have admitted testimony of two physicians with respect to future events or conditions because the doctors' testimony was conjectural and speculative, and not based on reasonable certainty. The fourth point argues that the trial judge erroneously failed to give a withdrawal instruction regarding future surgery testified to by one of the physicians.

 Dr. William S. Costen, an orthopedic surgeon who examined Mrs. Seabaugh, testified by deposition that at the time of his examination in 1988 she was still suffering pain in her right foot and further treatment was indicated due to the failure of the bone to heal properly. According to Dr. Costen, at that time he recommended steroid and cortisone injections which, if unsuccessful in alleviating the pain, would be followed by surgery to fuse the talonavicular joint. The doctor was also asked a hypothetical question: if Mrs. Seabaugh came back to see him at the time of the deposition in May of 1989, complaining of no improvement in the pain and requesting surgery, whether it was more likely than not that she will need surgery, based on the doctor's expert opinion. He answered

in the affirmative. Thereafter, the doctor was asked if all his opinions expressed had been "within a reasonable degree of medical certainty." Again the doctor responded in the affirmative. Nothing in the record indicates that an objection was made to these questions and answers at the taking of Dr. Costen's deposition.

Dr. Michael Trueblood, Mrs. Seabaugh's treating physician, also testified by way of deposition to various matters relating to the ankle injury. The testimony of Dr. Trueblood to which defendants take exception was as follows:

Q (by Mr. Cook [Plaintiff's Counsel]): Doctor, if you were asked, and I am asking you, to say that one result is more probable or the other result is more probable in the injury Linda Seabaugh has, is it more likely or less likely that her ankle will get worse and worse and more and more painful as time goes on?

A: It's more likely.

At the same deposition, and without objection, the witness testified to a "reasonable degree of medical certainty" that it was probable Mrs. Seabaugh would suffer increased deterioration of the talonavicular joint and have more pain in the mid part of her foot in the future.

At trial, defense counsel interposed an objection to the above quoted testimony: "as well as any other opinion in Dr. Trueblood's deposition. It is based upon what I believe is an improper standard, which is the more likely than not standard we've been discussing."

Our rules require that some, but not all, objections be made at the deposition of a witness, or those objections are waived.

Errors and irregularities occurring at the oral examination in the manner of taking of the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties and *errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition.*

*Rule 57.07(d)(3)(B)* (emphasis added). The rule serves to give questioning counsel an opportunity to rephrase the question, lay a better foundation, or clarify the question so that evidence will not be rejected at trial because of inadvertent omissions or careless questions. *Anderson Motor Service, Inc.,* 652 S.W.2d at 737. Here, if an objection had been made at the taking of Dr. Costen's deposition, plaintiff's lawyers may well have rephrased the question and thereby avoided the use of the words "more likely" or "probable" in the questions posed or answers given. Waiting until trial to raise the objections amounts to a waiver of the claims that the answers should not have been admitted because they were too speculative and conjectural.

■■■■ Assuming a timely objection was interposed, the testimony of Dr. Costen and Dr. Trueblood was admissible. With regard to Dr. Costen's testimony, he specifically testified that his opinions were based upon reasonable medical certainty. The mere fact that the course of treatment he recommended depended upon the results of a more conservative treatment prior to surgery does not render the evidence of future surgery inadmissible speculation and conjecture, or deprive such evidence of its probative value. *Breeding v. Dodson Trailer Repair, Inc.,* 679 S.W.2d 281, 284 (Mo. banc 1984).

■■■ Defendant concedes that in the depositions of Dr. Costen and Dr. Trueblood, each stated that his opinions were based on reasonable medical certainty. Nevertheless, defendant points to cross-examination testimony by Dr. Costen stating the need for the surgery was dependent upon the outcome of the cortisone treatments, and testimony of Dr. Trueblood that he did not know if the ankle injury would get worse. These statements by the physicians are nothing more than the obvious truism that no one can predict the future with absolute certainty. That, of course, is not and has never been the standard for determining whether evidence is admissible and sufficient to support submission of future damages. The standard for recovering for future consequences requires evidence of such a degree of probability of those future events occurring as to amount

to reasonable certainty. *Lebrecht v. United Rys. Co. of St. Louis*, 237 S.W. 112, 114 (Mo.1921); *see also Derschow v. St. Louis Public Service Co.*, 339 Mo. 63, 95 S.W.2d 1173, 1175 (1936). The testimony of the two physicians in this case meets that standard. The trial court therefore did not err in admitting the testimony. Because the evidence was admissible, there was no abuse of discretion in refusing to give the withdrawal instruction. Points four and five are denied.

## VI.

In its sixth point, defendant argues that severing the claims of Linda and Dennis Seabaugh from the claims of their children, Mark and Kendra Seabaugh, was not in furtherance of any of the purposes described in Rule 66.02 and therefore amounted to an abuse of discretion by the trial court. No authority is cited in support of this argument.

Rule 66.02 provides, "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim...."

■ In the case before the Court, the claims of the Seabaugh children and the claims of Linda and Dennis Seabaugh are completely separate claims. The claims of the children are not derivative of the claims of the mother and father in this case. The children's claims could have been filed as separate actions. It is altogether possible that requiring the children to submit their claims for injuries in the same case in which the claim of their mother was submitted may have some prejudicial effect on the children's claims. This Court will not second-guess a trial court's reasons for severing the claims. No abuse of discretion is apparent and the point is denied.

## VII.

Defendant's seventh point claims the trial court should have granted a new trial on the issue of damages because the verdict was so excessive as to indicate the award was based upon passion and prejudice. The jury found Linda Seabaugh's damages to be $100,000, and assessed her fault at 18% and defendant's fault at 82%.

■ There is no precise formula for determining whether a verdict is excessive, and each case must be considered on its own facts with the ultimate test being what fairly and reasonably compensates plaintiff for the injuries sustained. *Kenton v. Hyatt Hotels Corp.*, 693 S.W.2d 83, 98 (Mo. banc 1985). Consideration is given to the nature and extent of the injuries and diminished earning capacity, economic conditions, plaintiff's age, and a comparison of the compensation awarded and permitted in cases of comparable injury; the ultimate test is what fairly and reasonably compensates the plaintiff for the injuries sustained. *Graef v. Baptist Temple of Springfield*, 576 S.W.2d 291, 309 (Mo. banc 1978).

■ There was evidence of over $11,000 in medical bills and lost wages. There was also evidence that the plaintiff was suffering from post-traumatic degenerative arthritis, that she had trouble walking and had, since the date of the accident, suffered substantial pain and a loss of ability to engage in physical activity. As previously discussed, the medical evidence supported the conclusion that the disability and discomfort would continue throughout the remainder of Mrs. Seabaugh's life. Her life expectancy was over 40 years from the time of trial. In view of this evidence, the jury acted within its broad discretion in fixing the amount of damages, and the amount assessed is not shown to be out of line with other cases, *e.g.*, *Graef*, 576 S.W.2d at 309, and the cases cited at footnote 27 thereof.

## CROSS–APPEAL

The trial court instructed the jury to assess a percentage of fault to Mrs. Seabaugh if her vehicle was on the wrong side of the road and such conduct caused or contributed to cause the accident. The thrust of the single point in the cross-appeal is that the evidence was insufficient to support that submission.

Plaintiff argues that the only evidence of the location of the vehicles came from the testimony of Mrs. Seabaugh and the investigating trooper. Nothing in the deposition of Myers regarding the location of the vehicles was presented in evidence.

 The evidence supporting the contributory fault submission is considered in a light most favorable to the defendant. The defendant is given the benefit of all favorable inferences reasonably to be drawn from the evidence. Plaintiff's evidence is to be disregarded unless it tends to support the claim of contributory fault. *Welch v. Hyatt*, 578 S.W.2d 905, 912 (Mo. banc 1979).

 As previously noted, the road where the accident occurred was twenty feet wide. According to the investigating trooper, Mrs. Seabaugh's vehicle was apparently traveling in the tracks at the center of the road as she approached the curve. The trooper also testified that at the point of impact, the right front of the Seabaugh vehicle was five feet from the east edge of the road and the left front of the pickup truck was eight feet from the east edge of the road. The vehicles struck head-on. According to Mrs. Seabaugh, the left front of the pickup truck struck "from the middle over to the edge" of the left front of her vehicle. This evidence, viewed in a light favorable to the verdict, is sufficient to justify a conclusion by the jury that the left front of the Seabaugh vehicle was more than ten feet from the east edge of the roadway at the point of impact, placing it in the wrong lane of travel.

Accordingly, the judgment is affirmed.

ROBERTSON, C.J., RENDLEN, COVINGTON, and BLACKMAR, JJ., TURNAGE, Special Judge, and HIGGINS, Senior Judge, concur.

BENTON, J., not participating because not a member of the Court when case was submitted.