Evan F. KNIPP, Respondent,

v.

**DIRECTOR OF REVENUE, Appellant.**

**Nos. WD 54628, WD 54673.**

Missouri Court of Appeals,
Western District.

Nov. 10, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 1998.

Application for Transfer Denied
Feb. 23, 1999.

Peggy D. Richardson, Andereck, Evans, Milne, Peace & Baumhoer, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Bruce E. Hahn, Asst. Atty. Gen., Kansas City, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and RIEDERER, JJ.

ELLIS, Judge.

The Director of Revenue appeals from a judgment in the Circuit Court of Boone County reinstating Evan Knipp's driving privileges after revocation for refusal to sub-

mit to a chemical blood test pursuant to § 577.041.[1] Knipp cross-appeals, contesting two of the trial court's findings.

On January 25, 1997, Evan Knipp was involved in a one-vehicle accident on Route PP in Cooper County, Missouri. Trooper Steve Holder of the Missouri Highway Patrol responded to the scene at approximately 12:50 a.m. He observed a pickup truck on its roof straddling a ditch beside the roadway and Knipp trapped inside behind the steering wheel, with his arm pinned outside the truck between its roof and the ground. Trooper Holder observed twelve boxes scattered outside the vehicle, numerous empty beer cans, as well as some unopened cans of beer. The driver's side of the truck was crushed and the only access was through the passenger side door. When Holder asked Knipp what happened, Knipp responded that he didn't know, he guessed he just "lost it." The trooper smelled intoxicants on Knipp's breath, but was unable to make any further assessment of his condition given the arrival of rescue personnel.

Holder also interviewed Christopher Co-triss at the scene. Cotriss stated that the truck belonged to him but that he had been a passenger at the time of the accident and had climbed out the passenger side window. The trooper also noted the odor of intoxicants on Cotriss's breath.

Rescue personnel extricated Knipp from the truck and transported him to University Hospital in Columbia, Boone County, Missouri by helicopter. Holder left the scene shortly after the helicopter and drove to the hospital, arriving a few minutes before 2:30 a.m. While Knipp was being treated for a scalp wound, Holder interviewed him further. He noted that Knipp was alert and responsive, that his eyes were bloodshot and glassy, his speech was slurred, he was mumbling to himself, and there was an odor of intoxicants on his breath. Knipp failed a gaze nystagmus test. Holder asked Knipp how much he had to drink, and Knipp responded that he did not remember. When Holder asked Knipp if he had been driving the truck, Knipp responded, "I guess."

At approximately 2:30 a.m., Holder read Knipp the *Miranda* warnings, placed him

under arrest for driving while intoxicated and read him the implied consent law. Knipp did not request to speak to an attorney. He initially agreed to a blood test, but seconds later, as Holder turned away, Knipp stated, "I'm not f——ing giving him sh—." Holder read Knipp the implied consent law again, and Knipp refused the test. The Director revoked Knipp's license based on his refusal, and he filed a petition for review in the Circuit Court of Boone County on February 6, 1997.

The case was first set for hearing on March 14, 1997. On that date, the Director, represented by the Boone County prosecuting attorney, orally requested a continuance in order to subpoena its one witness, Holder. A continuance was granted until April 28, 1997. Knipp filed a motion to reconsider the continuance on March 17, 1997, which was denied by the court. At the hearing on April 28, 1997, only Holder and Knipp testified, and a great deal of their testimony was in conflict. Knipp claimed that Cotriss was driving the truck, that the accident actually occurred at 11:15 p.m. on the 24th, that he noted by his watch that it was 2:00 a.m. when medical personnel took him from the scene, and that he refused the blood test because he had been told he lost a great deal of blood and he thought he should not give any more. He did not communicate his reasoning to Holder or medical personnel at the time.

Under the statute, the trial court was required to make three determinations. First, it must determine whether the person was arrested. Second, it must determine whether the arresting officer had reasonable grounds to believe that the person was driving a motor vehicle in an intoxicated condition. Finally, the court must find whether the person refused to submit to a chemical test. § 577.041.3. In its order of June 5, 1997, the trial court found: (1) that Knipp *was* lawfully arrested on January 25, 1997; (2) that the arresting officer had reasonable grounds to believe that Knipp was driving a motor vehicle while in an intoxicated condition; and (3) that Knipp *did not* refuse to submit to a chemical breath [sic] test. Given its third finding, the trial court ordered

1. All statutory references are to RSMo 1994, unless otherwise noted.

Knipp's driving privileges reinstated. The Director filed her appeal on July 15, 1997, and Knipp filed notice of cross-appeal on July 24, 1997, contesting the court's findings (1) and (2).

▆ We view the evidence in the light most favorable to the judgment. *Wofford v. Director of Revenue*, 868 S.W.2d 142, 143 (Mo.App. E.D.1993). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, the judgment is against the weight of the evidence, or the judgment erroneously declares the law. *Hampton v. Director of Revenue*, 890 S.W.2d 364, 366 (Mo.App. W.D.1994); Rule 73.01.

Pursuant to Supreme Court Rule 84.04(j), Knipp is deemed the appellant in this court since he was the plaintiff in the action below. Mo. R. Civ. P. 84.04(j). He brings three points of error on appeal. First, he contends the trial court erred when it granted Director's motion for continuance at the hearing of March 14, 1997. Second, Knipp asserts that the court's finding that he was lawfully arrested was erroneous because the arrest occurred more than one and one-half hours after the alleged violation. Finally, he argues that the finding was also in error because the arresting officer did not have probable cause to make the arrest. Director brings one point of error on cross-appeal, asserting that the trial court erred in setting aside Knipp's license revocation when if found that Knipp had not refused the chemical test.

### Motion for Continuance

▆ In his first point on appeal, Knipp asserts that the trial court erred in granting Director's oral motion for continuance. Knipp states that he did not consent to Director's oral application for continuance, and it was an abuse of discretion for the trial court to grant the continuance over Knipp's objection.

▆ The grant or refusal of a continuance is a matter of broad judicial discretion. *Commerce Bank of Mexico, N.A. v. Davidson*, 667 S.W.2d 474, 476 (Mo.App. E.D.1984). In reviewing the trial court's ruling on a motion for continuance based on the absence of a witness, we give the trial court's decision every possible intendment in favor of the correctness of that ruling. *Seabaugh v. Milde Farms Inc.*, 816 S.W.2d 202, 207 (Mo. banc 1991). We will not disturb the ruling absent a showing of abuse of discretion by arbitrary or capricious exercise. *Commerce*, 667 S.W.2d at 476. An abuse of discretion occurs when the court's ruling is "so arbitrary and unreasonable as to shock the sense of justice and indicate lack of careful consideration." *Felton v. Hulser*, 957 S.W.2d 394, 397 (Mo.App. W.D.1997) (*quoting King v. Copp Trucking, Inc.*, 853 S.W.2d 304, 307 (Mo.App. W.D.1993)).

Knipp argues that the court's grant of Director's oral motion for continuance violates Rules 65.03 and 65.04. He contends that since Director's application was not in writing and opposing counsel did not consent to an oral application, the trial court erred in granting the motion.

▆ The Director contends she requested the continuance in order to produce its sole witness, Trooper Holder. Knipp admits that if the court had denied the motion, the Director would have had no evidence to present, and claims he lost the opportunity of acquittal on the technicality. "In exercising [its] discretion, the court should direct its attention toward the goals of fundamental fairness and the avoidance of unfair advantage." *Patton v. Patton*, 973 S.W.2d 139, 150 (Mo.App.W.D.1998) (citation omitted). Knipp fails to show that he was actually prejudiced or that the Director was unfairly advantaged. We must conclude that the trial court weighed all appropriate factors and determined in the interest of fundamental fairness and to avoid unfair advantage, the Director should be granted a continuance to produce Trooper Holder. We fail to find an abuse of discretion in granting the motion for continuance.

### Legality of the Arrest

▆ In his second and third points, Knipp challenges the legality of his arrest. He claims the trial court erred when it found that he had been lawfully arrested, both because the arrest occurred more than one and one-half hours after the alleged offense, during which time he was not removed from the scene for medical treatment, and because the officer did not have probable cause for the arrest.

Knipp asserts that the trial court erroneously applied the law. Statutory construction is a question of law, and where the lower court rules on matters of law, it is not discretionary. *State v. Ruch*, 926 S.W.2d 937, 938 (Mo.App.W.D.1996) (*citing State ex rel. Igoe v. Bradford*, 611 S.W.2d 343, 350 (Mo.App. W.D.1980)). If the law is erroneously declared or applied, the judgment of the trial court is afforded no deference. *Id.* at 938.

Knipp contends that Christopher Cotriss arrived at his (Knipp's) home at approximately 11:00 p.m. on the evening of the 24th, and that the two left shortly thereafter to drive to another location. He testified that the accident occurred at about 11:15 p.m., and Cotriss left the scene to get help. He did not recall talking with Trooper Holder at the scene. Although the events following the accident were not "crystal clear" to Knipp at trial, he testified that he was wearing a watch and noted that the helicopter which carried him to University Hospital in Columbia took off at 2:00 a.m. Knipp argues his awareness of the timing of the events even though he testified he could not remember how much he had to drink, what happened in the accident, does not recall speaking with Holder at the scene, and in fact was unconscious for part of the time.

Trooper Holder testified that he received a call to respond to the accident at 12:48 a.m., and that he arrived on the scene at about 12:50 a.m. He was able to speak briefly with Knipp before rescue personnel arrived on the scene and began extricating him from the vehicle. Holder stated that he only noted the odor of intoxicants on Knipp at the scene, and given that Knipp was trapped upside down in the truck and rescue work was a priority at that time, he was unable to question or observe Knipp sufficiently to establish probable cause as to his intoxication. Both parties agree the extrication took "a period of time." Holder left the scene shortly after the helicopter, and drove to University Hospital where he questioned Knipp immediately and placed him under arrest.

Section 577.039 governs warrantless arrests for violations of the state's drunk driving laws. It provides:

**Arrest without warrant, lawful, when.—** An arrest without a warrant by a law enforcement officer, including a uniformed member of the state highway patrol, for a violation of section 577.010 or 577.012 is lawful whenever the arresting officer has reasonable grounds to believe that the person to be arrested has violated the section, whether or not the violation occurred in the presence of the arresting officer and when such arrest without warrant is made within one and one-half hours after such claimed violation occurred, unless the person to be arrested has left the scene of an accident or has been removed from the scene to receive medical treatment, in which case such arrest without warrant may be made more than one and one-half hours after such violation occurred.

§ 577.039 (RSMo Supp.1997). Knipp claims the trial court erred in its first finding since the arrest occurred more than one and one-half hours after the alleged offense, as required by § 577.039.

In the case at bar, Knipp was trapped in a vehicle which was lying on its roof in a ditch. The driver's side of the vehicle was crushed, and Knipp was pinned between the steering wheel and the roof. His arm was caught outside the truck between the roof and the ground. Holder testified that rescue workers arrived on the scene a few moments after he reached Knipp, when he had only had the opportunity to ask him what happened. From the time rescue workers arrived, until the time of his arrest, Knipp was effectively under the control of medical and rescue personnel and was in the process of being removed for medical treatment. The court did not err when it found that the arrest was lawful under § 577.039. Knipp's point II is denied.

### Sufficiency of the Evidence

Knipp also attacks the evidence as insufficient for the court to find that the officer had probable cause to arrest him for operating a motor vehicle while in an intoxicated condition. Probable cause to arrest for driving while intoxicated exists when the facts and circumstances would lead a person of reasonable caution to believe an offense

has been committed. *Poage v. Director of Revenue*, 948 S.W.2d 194, 196 (Mo.App. E.D. 1997). While mere suspicion is not enough, absolute certainty is not required. *Wilcox v. Director of Revenue*, 842 S.W.2d 240, 242 (Mo.App. W.D.1992).

Once he was reasonably able to perform an assessment of Knipp, Holder noted that his speech was slurred, his eyes were bloodshot and glassy, and his breath smelled of intoxicants. Knipp failed a horizontal gaze nystagmus test. Knipp had been pinned in the driver's side of the vehicle. The only other occupant climbed out the passenger window. When asked if he was driving the vehicle prior to the accident, Knipp responded, "I guess." When Holder asked him what happened, Knipp replied, "I guess I just lost it." The accident scene was littered with beer cans, both empty and full. Under these facts, a reasonable person could conclude that Knipp was driving the truck, and that he had been doing so while in an intoxicated condition. "An officer may have reasonable grounds to arrest for driving intoxicated, even when his evidence of "actually driving" is based on circumstantial evidence." *Baptist v. Director of Revenue*, 971 S.W.2d 366, 368 (Mo.App.E.D.1998). The trial court did not err in finding that the arresting officer had reasonable grounds for arrest. Knipp's point III is denied.

### *Refusal of Chemical Test*

In her sole point on cross-appeal, the Director asserts that the trial court erred in setting aside the revocation of Knipp's driving privileges based on a lack of refusal. In its third finding, the trial court stated that Knipp did not refuse a chemical test "within the meaning of the statute."[2] The Director speculates that the trial court must have determined Knipp was in a condition rendering him incapable of refusing under § 577.033. She then argues that whether Knipp was physically able to give a blood sample is irrelevant under the statute because he verbally refused the test with no indication that he was incapable of doing so. Knipp presents no arguments in response to Director's point.

2. The court did not note *which* statute. The sections pertaining to refusal of chemical tests

We must agree with the Director. The court's finding that "there was no refusal within the meaning of the law" is not supported by the evidence. The record does not support a finding that Knipp was incapable of declining to take the test under his own volition. *Spradling v. Deimeke*, 528 S.W.2d 759, 766 (Mo.1975); § 577.033. According to the testimony of Trooper Holder, Knipp stated, "I'm not f——ing giving him sh——," and then refused the test a second time after Holder again read him the implied consent law to assure his understanding. At no time did Knipp consult with medical personnel or communicate his concern about blood loss to Holder. A lack of refusal under § 577.033 is not supported by the evidence.

It is clear that Knipp was arrested, and he did refuse the test. Consequently, the judgment of trial court is reversed, and the cause is remanded for entry of an order sustaining the revocation of Knipp's driving privileges.

All concur.