**CITY OF BRIDGETON, Appellant,**

v.

**CITY OF ST. LOUIS, Respondent.**

No. ED 76505.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 11, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 17, 2000.

Application for Transfer Denied
June 27, 2000.

Michael D. Hart, William A. Richter, St. Louis, for appellant.

Edward J. Hanlon, Donald G. Dylewski, Steven N. Cousins, Thomas E. Wack, Amici Curiae, St. Louis, for Regional Commerce and Growth Assoc., et al.

ROBERT G. DOWD, Jr., Judge.

The City of Bridgeton (Bridgeton) appeals from a judgment in a court-tried civil case in an action for declaratory judgment and injunction which seeks to prevent the City of St. Louis (St. Louis) from proceeding with its plan, W–1W, for the expansion of Lambert–St. Louis International Airport (Lambert Airport) and St. Louis's counterclaim which seeks a declaration that St. Louis is not required to comply with Bridgeton's zoning ordinances. The trial court denied Bridgeton's injunction and entered a judgment that St. Louis did not have to comply with Bridgeton's zoning ordinances. Bridgeton claims the trial court erred when it (1) held Section 305.200(3), RSMo 1994,[1] did not prohibit St. Louis from expanding Lambert Airport in Bridgeton without first obtaining Bridgeton's zoning approval; (2) ruled a new runway was not a "landing field" under Section 305.200(3); (3) held St. Louis did not first have to apply to Bridgeton for zoning approval; (4) overruled Bridgeton's motion in limine, heard evidence and issued a decision on a "balancing of interests" claim; (5) denied Bridgeton's motion for continuance and motion for bifurcation; (6) misapplied the "balancing of interests" test; and (7) stated in its order, judgment and injunction that St. Louis is not re-

---

1. All further statutory references are to RSMo 1994 unless otherwise indicated.

quired to comply with Bridgeton's zoning ordinances or "any other related land use ordinances in connection with [St. Louis's] expansion of the [Lambert] Airport pursuant to the W-1W Plan."[2] We affirm.

Bridgeton is a constitutional charter city under Missouri Constitution, Art. VI, Section 19, located in St. Louis County, Missouri. The City of St. Louis is a special constitutional charter city under Missouri Constitution, Art. VI, Section 31. St. Louis has owned and operated Lambert Airport since the 1920's. Lambert Airport is located outside of St. Louis, in Bridgeton and other adjacent cities in northwest St. Louis County.

In 1993, it was determined that the Master Plan for the airport needed to be updated. St. Louis proposed to add a runway and terminals to Lambert Airport. The proposed W-1W plan would extend the runway into an area of Bridgeton that is not zoned for an airport. The new runway is needed to allow for simultaneous landing of aircraft during inclement weather. The Federal Aviation Administration (FAA) requires runways to be 3,400 feet apart in order to have simultaneous instrument landings. Currently, the two major runways at Lambert Airport are less than 1,400 feet apart. At Lambert Airport, simultaneous instrument landings are not possible during inclement weather which creates delays to passengers in St. Louis and other destinations. The costs of these delays to the national economy is reflected in the FAA's Record of Decision which predicted a savings (based on the construction of the W-1W Project) of $1.9 billion at Lambert Airport and $5.1 billion to the National Air Transportation System during 2005 to 2015. There are also predicted savings to passengers from reduced delays

of $1.4 billion at Lambert Airport and $9.5 billion nationally. The FAA, after considering several plans, approved the W-1W plan as the only possible, prudent and practicable alternative.

Bridgeton sued St. Louis to prevent the expansion of the airport into Bridgeton in contravention of Bridgeton's zoning laws. The trial court found for St. Louis. This appeal follows.

In its first point, Bridgeton claims the trial court erred when it held Section 305.200(3), did not prohibit St. Louis from expanding Lambert Airport in Bridgeton without first obtaining Bridgeton's zoning approval. Bridgeton argues the plain language of the statute prohibits the construction of the new runway in violation of Bridgeton's Zoning Ordinance.

■ This same issue was litigated and decided in *City of St. Louis v. City of Bridgeton*, 705 S.W.2d 524 (Mo.App. E.D. 1985) (hereinafter *Bridgeton I*). In *Bridgeton I*, St. Louis wanted to construct an airport employee parking lot in Bridgeton on land St. Louis owned. *Id.* at 525. The area was not zoned for this use. *Id.* After the Bridgeton City Council unanimously rejected a proposed ordinance granting St. Louis permission to construct the lot under a section of the zoning ordinance applicable to off-street parking, St. Louis sought declaratory and injunctive relief seeking immunity from Bridgeton's zoning. *Id.* In its opinion, this court analyzed Section 305.200(3). *Id.* at 528. The pertinent part of Section 305.200(3) states:

…no airport or landing field shall be established or located in any county, city or city under special charter in violation of any plan or master airport plan or zoning regulation restricting the location

2. An amicus brief was filed on behalf of the following entities: Regional Commerce and Growth Association, Civic Progress, Inc., St. Louis County, City of Florissant, City of Ferguson, Coalition of Communities in Support of Westward Expansion, Senator Christopher Bond, Senator John Ashcroft, Governor Mel Carnahan, Former Senator Thomas Eagleton,

Former Senator John Danforth, North County Chamber of Commerce, St. Louis Economic Development Council, Creve Coeur–Olivette Chamber of Commerce, St. Louis Labor Council, Home Builders Association of Greater St. Louis, Leadership Council of Southwestern Illinois, St. Louis Clergy Coalition, and "Let's Get On With Our Lives."

of an airport or landing field adopted by the planning commission of any such county, city or city under special charter.

Judge Reinhard, writing for this court, found in analyzing this portion of Section 305.200(3) that "[t]his provision relates to the establishment of a new airport in a new location, not the operation of an existing one, and we find it inapplicable here." *Bridgeton I*, 705 S.W.2d at 528. We further note the absence of, or specific legislative silence related to, any statutory language regarding expansion or addition in Section 305.200(3). In Chapter 305, the term "establish" patently refers to an action undertaken at the outset of an airport's existence; wherein the act of establishing an airport or landing field is an act separate from acquiring, leasing or setting apart real property for such purpose. Section 305.210. Further, paragraph three of Section 305.200 states, "no airport or landing field shall be established or located in any county, city or city under special charter...."; whereas paragraph one of Section 305.200 provides that a county, city or special charter city can acquire property "for an airport or landing field or *addition* thereto...." (emphasis added.) It may be reasonably concluded that this language evinces a legislative intent to distinguish between a new airport and the expansion of existing facilities; thereby avoiding the situation where no surrounding municipalities would allow expansion within their boundaries; and thereby render expansion an impossibility and potentially, as a result, doom a viable airport, as well as the economic well-being of the dependent region.

 The addition of a runway to Lambert Airport is not the establishment of a new airport in a new location; it is the operation and expansion of an existing airport. Lambert Airport is an established airport. The proposed runway addition would enhance facilities already located there. The runway is meant to be an addition to existing facilities. We find W–1W is the expansion of an existing and operating airport. We again find Section 305.200(3) is inapplicable to this case. Point denied.

In its second point, Bridgeton claims the trial court erred when it ruled a new runway was not a "landing field" under Section 305.200(3). Bridgeton argues the construction of a new runway is a "landing field" under Section 305.200(3), and it cannot be built without zoning approval.

The language of the statute prohibits the establishment or location of a landing field or airport. We found under Bridgeton's first point that St. Louis is expanding an existing airport. St. Louis is not establishing or locating an airport or a landing field. Section 305.200(3) again is inapplicable. Point denied.

In its third point, Bridgeton claims the trial court erred when it held St. Louis did not first have to apply to Bridgeton for zoning approval. Bridgeton argues the Bridgeton Zoning Ordinance and the Intergovernmental Zoning Immunity Ordinance [3] are valid exercises of Bridgeton's authority and the evidence did not establish facts which would invalidate the ordinances. Bridgeton argues that even if Section 305.200(3) does not prohibit the airport expansion into Bridgeton, the basic principles of home rule embodied in Article VI, Section 19(a) of the Missouri Constitution should bar St. Louis from moving forward with W–1W. Bridgeton claims St. Louis must seek zoning approval from Bridgeton or establish that it is immune. St. Louis argues the determination of whether or not St. Louis is immune from Bridgeton's zoning regulations is a question of law for the courts, not a question for a city council to decide. Bridgeton argues St. Louis must exhaust administrative remedies by first seeking immunity

---

3. The trial court found this ordinance was enacted after, and in response to, the decision in *Bridgeton I*.

under the Ordinance before seeking judicial relief.

■ The issue sought to be resolved is whether or not St. Louis is immune from Bridgeton's *Zoning Ordinances*. This is a legal issue. Because the question poses no factual questions or issues requiring the special expertise within the scope of the administrative agency's responsibility, but instead proffers only questions of law clearly within the realm of the courts, the doctrine of exhaustion does not apply in the present case. *Premium Standard Farms, Inc. v. Lincoln Tp. Of Putnam County,* 946 S.W.2d 234, 238 (Mo.1997). A failure to exhaust administrative remedies may be justified when the only or controlling question is one of law, at least where there is no issue essentially administrative, involving agency expertise and discretion, which is in its nature purely administrative. *Id.*

Here, the question is whether or not St. Louis is immune from Bridgeton's zoning ordinances—a question of law. We find it is not necessary for St. Louis to exhaust administrative remedies before asking the court in its counterclaim to determine immunity. If the question had been "Is the area zoned R–1 or R–2?," it would be a question requiring the special expertise within the scope of the administrative agency's responsibility. Bridgeton's City Council has special knowledge and expertise in determining the zoning in areas of Bridgeton. Instead the question to be resolved here is whether or not St. Louis is immune from Bridgeton's zoning ordinances. We find it is not necessary for St. Louis to exhaust administrative remedies. Point denied.

In its fourth point, Bridgeton claims the trial court erred when it overruled Bridgeton's motion in limine, heard evidence and issued a decision on a "balancing of interests"[4] claim. Bridgeton argues it was error to hear evidence on a "balancing of

interests" claim because St. Louis did not plead immunity. We disagree.

■ The character of a cause of action is determined by the *facts* stated in the petition and not by the prayer or name given the action. *Farmer's Mut. Fire Ins. Co. v. Farmer,* 795 S.W.2d 104, 107 (Mo. App. S.D.1990) (emphasis added).

■ Both parties pleaded facts which were relevant to a balancing of interests test. Bridgeton specifically pleaded the negative effects the airport expansion would have on the community of Bridgeton. Bridgeton was aware intergovernmental immunity was at issue if the court found the Intergovernmental Immunity Ordinance was invalid. St. Louis asserts in its counterclaim that Bridgeton's Zoning Ordinance cannot be applied to prevent St. Louis from proceeding with its planned expansion of the Airport under the W–1W Project. St. Louis also stated in its counterclaim that a justiciable controversy exists between the parties as to whether St. Louis is subject to Bridgeton's Zoning Ordinance in connection with St. Louis's plan to expand the airport under the W–1W Project. Consequently, St. Louis would not be subject to Bridgeton's Zoning Ordinance if it had intergovernmental immunity. We find this issue was sufficiently pleaded to put Bridgeton on notice that the balancing of interests test would be used to show St. Louis's intergovernmental immunity. Point denied.

■ In its fifth point, Bridgeton claims the trial court erred when it denied Bridgeton's motion for continuance to sufficiently prepare for the issue of immunity and its motion for bifurcation to separate the "balancing of interests" claim from the determination of the validity of the Intergovernmental Zoning Immunity Ordinance. As a general principle, the grant or denial of a continuance is largely within

---

4. As will be more fully developed later in Bridgeton's sixth point, the question of immunity can be addressed by applying two tests, one of which is the "balancing of interests" test.

the discretion of the trial court. *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 207 (Mo.1991). It is the trial court's responsibility to control its docket and the progress of litigation. *Lohmann By and Through Lohmann v. Norfolk & Western Ry. Co.,* 948 S.W.2d 659, 672 (Mo.App. W.D.1997). The denial of a continuance is rarely reversible error, but the trial court does not enjoy absolute or arbitrary discretion. *Id.* In exercising its discretion, the court should direct its attention toward the goals of fundamental fairness and the avoidance of unfair advantage. *Knipp v. Director of Revenue,* 984 S.W.2d 147, 150 (Mo.App. W.D.1998). We find no abuse of discretion.

Bridgeton became aware of St. Louis's claim of immunity from Bridgeton's Zoning Ordinances when St. Louis filed its counterclaim in October 1998 with a trial date of December 7, 1998. The trial date was subsequently reset to January 11, 1999, because of Bridgeton's request for a change of judge. Bridgeton's position has consistently been to oppose immunity and to require St. Louis to apply to it for an immunity determination under its Intergovernmental Zoning Ordinance. Bridgeton was aware the balance of interests test would be used to determine immunity as this court had previously decided in *Bridgeton I.* Furthermore, Bridgeton fails to show how it was prejudiced or that St. Louis was unfairly advantaged by the courts denial of its motion for continuance and its motion for bifurcation. Bridgeton cites cases where a denial of a continuance was reversible error. *See Missouri Public Service Company v. Argenbright,* 457 S.W.2d 777, 785 (Mo.1970); *Wegeng v. Flowers,* 753 S.W.2d 306, 308 (Mo.App. W.D.1988). Reversal in these cases was based on a claim of surprise. In this case,

we fail to see that surprise was a significant factor. It was clear early on that a determination of immunity would be a significant aspect of the case. We fail to find an abuse of discretion in denying the motion for continuance and bifurcation. Point denied.

In its sixth point, Bridgeton claims the trial court erred when it misapplied the "balancing of interests" test. Bridgeton argues the trial court should not have only considered expansion under W–1W versus no expansion under W–1W, but should have considered all the other possible expansion alternatives. We disagree.

▮ In a court-tried case, the decision of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). W1–W is the only plan mentioned in the pleadings and the only plan approved by the FAA.[5] After considering several alternatives, it was the only option the FAA approved and the FAA found it was "the only possible, prudent and practicable alternative." We do not expect the trial court to examine every imaginable option that is no longer being considered for expansion of Lambert Airport. The trial court properly considered the options placed before it—to expand Lambert Airport under W–1W or no expansion at all.

▮ We also find the trial court properly applied the balance of interests test. The trial court heard evidence from both parties considering the impact of the Airport expansion. In resolving claims of governmental immunity from zoning regulations, Missouri courts have applied two

---

5. Bridgeton submitted an airport expansion proposal, Bridgeton 2020, to the FAA. This plan was examined by the FAA as an alternative but eliminated from detailed analysis. Mayor Bosley of St. Louis in a letter to the Mayor of Bridgeton indicated that he submitted Bridgeton's 2020 plan for review. His letter further stated: "I have directed my airport staff to coordinate closely with the City of Bridgeton during the development of the W–1W plan so that the interests of your community are given full consideration in the planning process."

tests: (1) the "power of eminent domain" test, and (2) the "balancing of interests" test. *City of Washington v. Warren County*, 899 S.W.2d 863, 865–66 (Mo.1995).

The court in *Bridgeton I* detailed factors to consider when evaluating immunity under the balancing of interests test. "The factors the court considered were the nature and scope of the instrumentality seeking immunity, *the kind of function or land use involved, the extent of the public interest to be served thereby,* the effect local land use regulation would have upon the enterprise concerned and the impact upon legitimate local interest." *Bridgeton I,* 705 S.W.2d at 529. *"In some instances one factor will be more influential than another or may be so significant as to completely overshadow all others." Id.* *"And there will undoubtedly be cases,* as there have been in the past, *where the broader public interest is so important that immunity must be granted even though the local interests may be great." Id.*

Here, the trial court evaluated the interests of the parties using the balancing of interests test. In its analysis, the trial court concluded St. Louis was immune from Bridgeton's zoning ordinances because the importance of expanding Lambert Airport pursuant to the W–1W plan outweighed Bridgeton's interest in enforcing its zoning ordinances as to St. Louis.

The trial court considered Lambert Airport's current inadequate capacity which might endanger its status as a hub airport. The trial court considered Lambert Airport's inability to accommodate traffic during inclement weather. The trial court also considered the savings to passengers because of reduced delays. There was also evidence of the regional and statewide importance of expanding Lambert Airport. Lambert Airport's location west of St. Louis provides important access to Jefferson City, the State capitol, and its location benefits the St. Louis region concentrated westward of St. Louis City. Delay or impediment to Lambert Airport's expansion would be detrimental to the economic development of the State of Missouri. Additionally, there was credible testimony that airports generate significant regional economic growth in terms of jobs and commercial activity, including in those communities in close proximity to the Airport.

The trial court also heard evidence of Bridgeton's interest in maintaining their community. The acquisition for the expansion would require over 18 % of Bridgeton's total land area including more than 1,900 residential parcels, 6 schools, at least 2 parks, 6 churches and 75 businesses. After considering all of the evidence, the court found the expansion would benefit not only citizens of St. Louis, but citizens in Bridgeton, the entire metropolitan area, and the State of Missouri.

The trial court examined copious amounts of evidence and determined St. Louis is immune from Bridgeton's zoning ordinances using the balancing of interests test. The substantial benefits conferred by the operation of the airport on the public clearly outweigh the interests of Bridgeton. The expansion of Lambert Airport is essential to its survival. We find there was substantial evidence to support the trial court's finding, the finding was not against the weight of the evidence, and the trial court did not erroneously declare or apply the law. Point denied.

In its seventh and final point, Bridgeton claims the trial court erred when it stated in its judgment, order and decree that St. Louis is not required to comply with Bridgeton's zoning ordinances or "any other related land use ordinances in connection with [St. Louis's] expansion of the [Lambert] Airport pursuant to the W–1W Plan." Bridgeton argues the injunction is overbroad and vague. We disagree.

The molding of an appropriate injunctive decree rests largely in the sound discretion of the trial court, which is vested with a broad discretionary power to shape and fashion the relief it grants to fit particular facts, circumstances, and equi-

ties of the case before it. *May Dept. Stores Co. v. County of St. Louis,* 607 S.W.2d 857, 870 (Mo.App. E.D.1980). A reviewing court will uphold the injunction unless there is no substantial evidence to support it or unless it erroneously declared or applied the law. *Champion Sports Center, Inc. v. Peters,* 763 S.W.2d 367, 369 (Mo.App. E.D.1989) (citing *Murphy v. Carron,* 536 S.W.2d at 32). An injunction must clearly and specifically describe the acts and things enjoined so as not to be subject to misunderstanding and confusion by those against whom it is directed. *Farmer's Mut. Fire Ins. Co. v. Farmer,* 795 S.W.2d at 109.

 Here, the injunction states, "St. Louis is not required to comply with [Bridgeton's] Zoning Ordinance, or any other related land use ordinances in connection with [St. Louis's] expansion of [Lambert] Airport pursuant to the W–1W Plan." We find the injunction is not unreasonably vague as to what it prohibits. In *Champion Sports Center, Inc.,* 763 S.W.2d at 370, the court found that the contract between the parties could be used to interpret the meaning of the injunction. The contract described the activities of the business that the former employee was now prohibited from competing with. *Id.* Likewise, here, we find the W–1W plan provides meaning as to what activities Bridgeton may not interfere with in the expansion of Lambert Airport. We find the injunction is specific enough to provide meaning to the parties. Point denied.

Judgment affirmed.

CRANE, P.J., and SULLIVAN, J., concur.