**PATRICK V. KOEPKE CONSTRUCTION, INC., Appellant,**

v.

**Richard PALETTA and Palcor Capital Investors, Inc., Respondents.**

**No. ED 81742.**

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 26, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 16, 2003.

Application for Transfer Denied Nov. 25, 2003.

Alan G. Kimbrell, Chesterfield, MO, for appellant.

James R. Dowd, St. Louis, MO, for respondent Richard Paletta.

Vincent D. Vogler, Jr., James R. Dowd (co-counsel), St. Louis, MO, for respondent Palcor Investments.

### *OPINION*

GLENN A. NORTON, Presiding Judge.

Patrick V. Koepke Construction, Inc. appeals the judgment denying its petition asking the court to declare a fraudulent transfer, pierce the corporate veil of Palcor Capital Investors, Inc. and hold Richard Paletta personally liable for Palcor's debt to Koepke. We affirm.

### I. BACKGROUND

The underlying debt arose after Koepke provided work in 1988 on property owned by Palcor. In 1989, after the work was completed, Palcor sold the property. Palcor never paid for Koepke's work.

Koepke filed suit to impose a mechanic's lien on the property and to recover for unjust enrichment against Palcor and its joint venture partner ("the lien case"). The trial court entered judgment in favor of Koepke on both claims. On appeal, the mechanic's lien was reversed, and the unjust enrichment judgment was affirmed as to liability and remanded for recalculation of damages. *See Patrick V. Koepke Construction, Inc. v. Woodsage Construction Company,* 844 S.W.2d 508 (Mo.App. E.D. 1992). In 1993, after remand, a consent judgment was entered, which Paletta signed as president of Palcor and as statutory trustee of Palcor's joint venture partner. Over the next several years, Koepke attempted unsuccessfully to execute on the judgment against Palcor.

In 2000, Koepke filed the petition that is the subject of this appeal.[1] In the petition, Koepke alleged that Paletta was aware of Koepke's claim for unpaid work at the time the property was sold and that Paletta transferred the sale proceeds to himself in an effort to defraud Koepke. Moreover, Koepke asserted, Paletta fraudulently concealed this transfer. Koepke also alleged that, at the time Paletta signed the consent judgment, he knew that Palcor had no assets to satisfy that judgment. Koepke claimed that Paletta—as president and sole shareholder—was the alter ego of Palcor and sought to pierce the corporate veil to hold Paletta liable for Palcor's debt to Koepke.

In 2002, Paletta and Palcor filed a motion for summary judgment and attached Paletta's affidavit. Koepke claimed that the affidavit contained statements not found in Paletta's prior testimony in the

---

1. Also in 2000, Koepke filed a motion for a creditor's bill in the lien case, which was ultimately denied on the grounds that it was barred by *res judicata* as a result of the judgment in this case. The judgment denying that motion is also currently pending on appeal before this division in *Patrick V. Koepke Construction, Inc. v. Woodsage Construction Company,* 844 S.W.2d 508 (Mo.App.E.D.1992).

lien case and sought another deposition of Paletta. When Paletta refused to appear, Koepke moved to compel his appearance. The court denied the motion, but in its order stated that if the motion for summary judgment was denied, then Koepke could take Paletta's deposition before trial. The summary judgment motion was still under submission when the case was called for a bench trial. At the outset of the trial, the court denied the summary judgment motion. Koepke attempted to call Paletta as its first witness, but he was not present; it appears that he had been in the courtroom at the beginning of the proceedings, but had left and had not been subpoenaed.

After examination of the next witness, Koepke asked for a continuance so it could take Paletta's deposition under the court's previous order denying the motion to compel. The court responded that it had given the parties notice by telephone the week before the trial date that the summary judgment motion would be denied and everyone should be ready for trial. The court set aside its earlier ruling denying the motion for summary judgment, denied the motion to continue and took the summary judgment motion under submission with the case. The court did, however, admit into evidence Paletta's deposition and trial testimony from the lien case. Ultimately, the court also took judicial notice of the pleadings in both cases and various other exhibits and testimony.

The court entered judgment denying Koepke's petition, finding that there was not substantial evidence—direct or circumstantial—of any fraudulent transfer and no justification to pierce the corporate veil. Koepke appeals.[2]

## II. DISCUSSION

On review of this court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

### A. Piercing the Corporate Veil and Fraudulent Transfer

In its first two points, Koepke argues that there was substantial credible evidence that Paletta used his complete domination of Palcor to pay himself a salary from the proceeds of the property sale rather than discharge Palcor's debt to Koepke. This, Koepke contends, was a fraudulent transfer and justified piercing Palcor's corporate veil to hold Paletta personally liable for Palcor's debt. We disagree.

▉ To prove that a conveyance was fraudulent and have it set aside, a creditor must show by clear and convincing evidence that the transfer was made with an intent to hinder, delay, or defraud creditors. *Bueneman v. Zykan,* 52 S.W.3d 49, 54 (Mo.App. E.D.2001). Because fraudulent intent is difficult to establish by direct proof, it must be demonstrated by the surrounding circumstances. *Id.* Fraud is never presumed when the transaction may be fairly reconciled with honesty. *Id.*

▉ The circumstances in which Missouri courts will pierce the corporate veil to hold the corporation's owner liable for its debt are narrow, and courts do not take this action lightly. *66, Inc. v. Crestwood Commons Redevelopment Corp.,* 998 S.W.2d 32, 40 (Mo. banc 1999); *Acme Royalty Co. v. Director of Revenue,* 96 S.W.3d 72, 81 n. 6 (Mo. banc 2002). The plaintiff must show:

2. Palcor and Paletta have not filed timely responsive briefs.

1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

2) Such control must have been used by the corporation to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

3) The control and breach of duty must proximately cause the injury or unjust loss complained of.

*66, Inc.*, 998 S.W.2d at 401; *see also Saidawi v. Giovanni's Little Place, Inc.*, 987 S.W.2d 501, 505 (Mo.App. E.D.1999) (piercing the corporate veil requires proof that "the corporate cloak" was used as a "subterfuge to defeat public convenience, to justify a wrong, or to perpetrate a fraud"). Undercapitalization or stripping corporate assets to avoid the demands of creditors may justify piercing the corporate veil. *See Sansone v. Moseley*, 912 S.W.2d 666, 669 (Mo.App. W.D.1995).

 In this case, Paletta testified that "during the '80's," the net earnings of Palcor were distributed to Paletta as the shareholder for tax purposes, and that periodically, when Palcor's real estate transactions consummated, he was paid a salary. The distributions for tax purposes could exceed $200,000 gross annually, but the annual salary Paletta received from Palcor varied from year to year, depending on the size of the transactions. Although there is evidence that the sale of the property Koepke worked on generated proceeds in 1989, Paletta explained that those proceeds went exclusively to Palcor—not to him personally—to pay mortgages, other liens, lawyers and transaction fees. Paletta could not recall the amounts of the distributions or the salary he took the year of that transaction.

Taking unspecified amounts of money in the form of shareholder distributions and salary at unspecified times is not clear and convincing evidence of a conveyance done with the intent to defraud. Even if the circumstances surrounding the distributions and salary in 1989 were suspicious, Koepke failed to show that any particular transaction was made under those circumstances with fraudulent intent. Nor is this non-specific evidence of Paletta's salary and distributions, without proof of its effect on the corporation's assets, sufficient evidence that Paletta used his control to strip the corporation's assets to avoid creditors.

The trial court's conclusion not to declare a fraudulent transfer or pierce the corporate veil was supported by substantial evidence and was not against the weight of the evidence. Points I and II are denied. Having affirmed the judgment on its merits finding no fraudulent transfer, we need not consider Koepke's fourth point on appeal regarding whether fraudulent concealment of those transfers should have tolled the statute of limitations on that claim.

**B. Continuance of Trial**

 In Koepke's third point, it argues that the trial court abused its discretion by refusing to compel Paletta's attendance at a properly noticed deposition, by refusing to "honor its commitment" to allow Koepke to depose Paletta before trial after the summary judgment motion was denied and by refusing to continue the trial until Paletta's attendance could be procured.

 Koepke provides no argument in support of its claim that the court erred by

denying the motion to compel, and therefore we will not review it. "Arguments raised in the points relied on which are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." *Faith Baptist Church of Berkeley, Inc. v. Heffner*, 956 S.W.2d 425, 426 (Mo.App. E.D.1997).

■■■ Koepke's argument focuses on whether the trial court should have continued the trial to allow a deposition of Paletta or to allow Koepke to procured his attendance at trial. The grant or denial of a continuance is largely within the discretion of the trial court. *Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 207 (Mo. banc 1991). Every intendment is made in favor of the correctness of the trial court's ruling. *Id.* While the denial of a continuance is rarely reversible error, the trial court does not enjoy absolute or arbitrary discretion. *City of Bridgeton v. City of St. Louis*, 18 S.W.3d 107, 112 (Mo.App. E.D. 2000). "In exercising its discretion, the court should direct its attention toward the goals of fundamental fairness and the avoidance. of unfair advantage." *Id.* We find no abuse of discretion here.

■■■ Koepke does not claim that it did not have notice of the trial date. The failure to secure Paletta's attendance at trial is Koepke's fault alone, and his absence does not mandate a continuance. "Although a party has a right to attend his trial ... his absence is not always reason for a continuance." *See Burke v. Doerflinger*, 565 S.W.2d 758, 760 (Mo.App. 1978). Moreover, Koepke fails to show how it was prejudiced or how Paletta was unfairly advantaged by the ·court's denial of a continuance because Paletta's prior deposition and trial testimony was admitted into evidence. Koepke did not explain

to the trial court why further examination of Paletta was needed.

Under these circumstances, the trial court did not abuse its discretion by denying Koepke's motion for continuance. Point IV is denied.

### C. Admission of Exhibit

■■■ In its final point, Koepke argues that the trial court erred in refusing to admit the closing statement from the property sale as hearsay because it "was offered as proof of the contents thereof, and not for the truth of any matter stated therein." We assume that Koepke means to argue that this exhibit was not offered for the truth of its contents but only to prove that the closing occurred. Even if we determined that the closing statement should have been admitted and considered, our review of that document reveals that it is not relevant to the propriety of the judgment. *See Heavrin v. Shop 'n Save*, 922 S.W.2d 463, 465 (Mo.App. E.D.1996).

The document does not amount to overwhelming evidence requiring reversal; that is, with or without the closing statement, there was substantial evidence to support the trial court's judgment. Point V is denied.

### III. CONCLUSION

The judgment is affirmed.[3]

KATHIANNE KNAUP CRANE and MARY K. HOFF, JJ. concurring.

---

**3.** Palcor's and Paletta's motion to strike

Koepke's brief, dismiss the appeal and order

sanctions and attorney fees is denied.