LISA WHITE HARDWICK, Judge.
 

 This appeal arises from a judgment allowing the Bank of Belton (Bank) to pierce the corporate veil of J & M Development of Cass County, Inc. (J
 
 &
 
 M), based on a determination that J
 
 &
 
 M was the alter ego of the Bank’s insolvent debtor, Bogar Farms, Inc. (Bogar Farms). We reverse the judgment because the evidence was insufficient to prove that asset transfers between J & M and Bogar Farms was the proximate cause of any financial injury to the Bank.
 

 Factual and Procedural History
 

 The Bank obtained a judgment for contract damages of $179,821.18
 
 [1]
 
 against Bo-gar Farms and Michael Bogar (collectively, Bogar defendants) after they defaulted on three loan agreements. Because Bogar Farms was insolvent, the Bank filed an additional claim against J & M seeking to prove that it was the alter ego of Bogar Farms because the two corporations had “overlapping” ownership, commingled funds, and substantial asset transfers between themselves.
 

 The Bank’s alter ego claim alleged that Michael Bogar owned 100% of the Bogar Farms stock, while his wife, Janie Bogar, owned all of J & M’s stock. The petition further alleged that Mr. Bogar transferred funds between the corporations to “shield assets” and “escape liability” under the loan agreements. Based on the alleged alter ego relationship of Bogar Farms and
 
 *506
 
 J & M, the Bank requested the court to pierce the corporate veil and hold J & M jointly liable for the judgment against the Bogar defendants.
 

 The Bank and J
 
 &
 
 M agreed to submit the alter ego claim on stipulated facts. Based on the stipulations, the court found that Michael Bogar dominated and controlled J & M such that J
 
 &
 
 M had no separate identity from Bogar Farms, and that Michael Bogar used that control to engage in financial transfers in contravention of the Bank’s legal right to recovery under the loan agreements. The court further found the Bank was “damaged” by the transfer of assets between the alter ego corporations because Bogar Farms was insolvent and unable to meet its' obligations under the loan agreements. Accordingly, the court entered judgment allowing the Bank to pierce the corporate veil of J
 
 &
 
 M and levy and execute upon J
 
 &
 
 M’s assets for judgment entered against the Bogar defendants.
 

 Piercing the Corporate Veil
 

 J
 
 &
 
 M raises five points challenging the court’s determination to pierce the corporate veil based on the stipulated facts. We need only address the second point, as it is dispositive. In Point II, J & M contends the stipulated facts are insufficient to prove the Bank was damaged by the alter ego relationship and, therefore, the Bank is not entitled to pierce the corporate veil.
 

 The standard of review in this bench-tried case based on stipulated facts is set forth in
 
 Schroeder v. Horack,
 
 592 S.W.2d 742, 744 (Mo. banc 1979). Contrary to J & M’s “assertion that our review is governed by
 
 Murphy v. Carron,
 
 536 S.W.2d 30, 31 (Mo. banc 1976), the only question before this court is whether the trial court drew the proper legal conclusions from the facts stipulated.”
 
 Schroeder,
 
 592 S.W.2d at 744.
 

 Missouri law recognizes narrow circumstances for piercing the corporate veil, and courts do not take this action lightly.
 
 Patrick V. Koepke Constr., Inc. v. Paletta,
 
 118 S.W.3d 611, 614 (Mo.App.2003). Ordinarily, the separate legal identities of two corporations will be protected.
 
 Collet v. Am. Nat’l Stores, Inc.,
 
 708 S.W.2d 273, 283 (Mo.App.1986). However, situations do arise when one corporation shows such domination and control over another that the latter corporation becomes a mere adjunct or “alter ego” of the first.
 
 Id.
 
 at 283-84 If this alter ego relationship is used to accomplish a fraud or unlawful purpose, then courts can disregard the separate formal corporate structures, thereby piercing the corporate veil to hold the dominant corporation liable for the debts its adjunct corporation.
 
 Id.
 
 at 284.
 

 A three-part test applies in determining whether to pierce the corporate veil. The Bank must demonstrate that: (1) J & M exercised such complete control and domination over Bogar Farms that Bogar Farms had no separate mind, will or existence with regard to the financial transactions at issue; (2) J
 
 &
 
 M used its control and domination over Bogar Farms to commit fraud or violations of legal duties in contravention of the Bank’s rights; and (3) J & M’s control of Bogar Farms and breach of duty proximately caused injury to the Bank.
 
 66 Inc., v. Crestwood Commons Redevelopment Corp.,
 
 998 S.W.2d 32, 40 (Mo. banc 1999).
 

 The third element of this test is at issue in Point II of the appeal. J & M contends the stipulated facts are insufficient to show that its alleged control and domination was the proximate cause of Bogar Farms’ insolvency and the Bank’s inability to collect from Bogar Farms.
 

 The parties stipulated that Michael Bo-gar “controlled” both J & M and Bogar Farms. Under Mr. Bogar’s control, the
 
 *507
 
 corporations made several mutually beneficial financial transactions or transfers during the relevant period of November 1998 through August 2000. The facts state that the total amount of transfers from Bogar Farms for the benefit of J & M was $55,581.19, and that J & M transferred $66,719.78 of its assets back to pay the debts of Bogar Farms.
 
 [2]
 
 The parties expressly stipulated that these transfers resulted in Bogar Farms receiving $11,188.59 more than it had paid out for J
 
 &
 
 M’s benefit. The parties further stipulated that Bogar Farms is insolvent and the Bank is damaged because it has an uncol-lectible judgment against Bogar Farms.
 

 Although the stipulated facts are sufficient to show the Bank was injured from Bogar Farms’ inability to pay the judgment, there are no facts to prove J & M exercised such control and domination over Bogar Farms as to cause the insolvency. The Bank argues on appeal that “the transfer of assets to [J & M] depleted available assets” and left Bogar Farms “undercapitalized, such that it defaulted on its loans to the Bank.” However, the facts clearly establish that J & M provided more money to Bogar Farms than it received from Bogar Farms. The Bank’s argument completely ignores the $11,188.59 windfall to Bogar Farms from its alleged dominant corporation.
 

 Michael Bogar may have controlled both corporations, but the facts do not indicate that he used J & M to deplete Bogar Farms’ assets. None of the stipulated facts provide a causal link between the monies exchanged by the corporations and the insolvency or undercapitalization of Bogar Farms. Regardless of whether the facts show an alter ego relationship, there is no evidence to indicate the Bank was injured as a result of any financial transactions between J & M and Bogar Farms.
 

 Based on the stipulated facts, the trial court failed to draw the proper legal conclusion on the third element required to pierce J & M’s corporate veil. The facts do not demonstrate that J & M’s control over Bogar Farms was the proximate cause of the insolvency and the Bank’s resulting inability to collect its debt from Bogar Farms. Accordingly, the court erred in granting relief on the alter ego claim. The judgment against J & M is reversed.
 

 All concur.
 

 [1]
 

 . The judgment also awarded the Bank attorney’s fees in the amount of $78,902.
 

 [2]
 

 . Bogar Farms benefited J
 
 &
 
 M primarily by making a down payment and some installment payments on land purchased by J & M. J & M benefited Bogar Farms by applying its sales proceeds to Bank debts owed by Bogar Farms.